OPINION
{¶ 1} This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas granting appellee, Rural Metro Ambulance, Inc., summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The following facts are undisputed. On February 27, 1998, the decedent, Barbara A. Donlin, collapsed while teaching at St. Patrick's Elementary School in Hubbard, Ohio. When paramedics employed by appellee responded to the school, they immediately began treating the decedent. Several minutes later, a second ambulance arrived to assist the first. Unfortunately, the paramedics were unable to revive the decedent and she later was pronounced dead at the hospital.
 {¶ 3} Appellant, Patrick J. Donlin, executor of the decedent's estate, filed a wrongful death action against appellee on May 13, 1999. According to the complaint, the actions of the paramedics who provided emergency care for the decedent constituted willful and wanton misconduct and ultimately resulted in her death.
 {¶ 4} After filing an answer, appellee submitted a motion for summary judgment in which the company argued that the paramedics' actions did not fall below the accepted standard of care, and that it was entitled to immunity under R.C. 4765.49(A). Appellant attached, among other items, an affidavit from Kevin Orwick ("Orwick"), a paramedic on the first ambulance to arrive on the scene. He claimed that at the time of the incident, the ambulance he was on was equipped with a functional defibrillator and that he and his partner used the unit within two minutes of arriving at the school. Orwick also denied that a second ambulance was requested because the defibrillator on his ambulance was not functioning; instead, he maintained that it was standard operating procedure to call for an additional ambulance and crew when treating a person in cardiac arrest. Appellee included a copy of Orwick's written report, which detailed the medical care provided by him and his partner to the decedent. The report indicated that paramedics used a defibrillator two times before the second ambulance's arrival, and one more time after.
{¶ 5} Appellee also submitted an affidavit from Pat Hughes ("Hughes"), a paramedic on the second ambulance. Hughes stated that when he arrived at the school, the crew from the first ambulance was already providing the decedent with emergency assistance. He further claimed that the first ambulance was equipped with a functional defibrillator and that his ambulance was not requested to provide another unit.
 {¶ 6} Appellant filed a brief in opposition in which he argued that there was a genuine issue of material fact as to whether the paramedics recklessly disregarded appellee's treatment protocol and the applicable standard of care when assisting the decedent. According to appellant, there was evidence that the first ambulance at the school did not have an operational defibrillator on board, and that, if it did, the paramedics did not use it in a timely manner. He maintained that it was only after the second ambulance arrived that the paramedics attempted to revive the decedent by using a defibrillator. To support his position, appellant attached the deposition of Officer Robert Paterniti ("Officer Paterniti"), who testified that although he was in the room where paramedics treated the decedent, he did not see a paramedic from the first ambulance use a defibrillator. Appellant also included an affidavit from Darla J. Vogelsang ("Vogelsang"), an employee of the school, who claimed that "[a]s [her and the decedent's husband] moved from the area outside the classroom where paramedics were working on [the decedent], [she] heard someone (not sure whether an ambulance person, policeman, or someone from the staff) say there was a need for a second ambulance because they needed more oxygen and defibrillator equipment."[1]
 {¶ 7} The trial court considered the evidence, and in a judgment entry dated September 30, 2002, granted appellee summary judgment. The court found that "there [was] no credible evidence before [it] that the first ambulance did not have a defibrillator on board or at the scene." As a result, the trial court concluded that "there [was] no evidence of any willful and wanton conduct."
 {¶ 8} From this decision, appellant filed a timely notice of appeal with this court. He now argues under his sole assignment of error that summary judgment was improper because questions remained concerning whether the first paramedics to arrive at the school acted in a willful and wanton manner by responding without an operational defibrillator.
 {¶ 9} Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Leibreich v. A.J.Refrigeration, Inc., 67 Ohio St.3d 266, 268, 1993-Ohio-12.
 {¶ 10} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turnerv. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 11} The party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim.Dresher at 293.
 {¶ 12} If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id.
 {¶ 13} R.C. 4765.49(A) provides that "[a] first responder, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic is not liable in damages in a civil action for injury, death, or loss to person or property resulting from the individual's administration of emergency medical services[.]" However, if "the services are administered in a manner that constitutes willful or wanton misconduct[,]" immunity will not apply.
 {¶ 14} Here, appellant argues that appellee was not entitled to immunity because the alleged failure to bring a functional defibrillator to the school constituted willful and wanton misconduct. He further maintains that there is a genuine issue of material fact with respect to this issue because: (1) he provided testimony from a person in the room with the paramedics indicating that he did not see the first paramedics use a defibrillator; (2) the same person testified that it was the paramedics from the second ambulance who removed the clothing from the decedent's chest before using a defibrillator; and (3) another person claimed she heard that the second ambulance was requested because more oxygen and a defibrillator were needed.
 {¶ 15} At the outset, we note that "[w]here the evidence in the record does not suggest a material factual issue on the question of reckless or willful or wanton misconduct, [it] is perfectly proper to determine the case by means of summary judgment." Garrison v. Bobbitt (1999), 134 Ohio App.3d 373,385. See, also, Iberis v. Mahoning Valley Sanit. Dist., 11th Dist. No. 2000-T-0036, 2001-Ohio-8809, 2001 Ohio App. LEXIS 5837, at 19. Therefore, to defeat appellee's motion for summary judgment, appellant was required to produce evidence of the type listed in Civ.R. 56(C), demonstrating that, if such evidence regarding appellee's actions are presumed to be true, such actions would constitute willful or wanton misconduct, thereby creating an exception to the immunity granted via R.C.4765.49(A).
 {¶ 16} Accordingly, resolution of the matter before us turns solely upon whether the evidence presented by appellant establishes willful or wanton misconduct. This court has previously defined willful and wanton misconduct in the following manner:
 {¶ 17} "`"Wanton misconduct" comprehends an entire absence of all care for the safety of others and an indifference to consequences. * * * It implies a failure to exercise any care toward those to whom a duty of care is owing when the probability that harm will result from such failure is great, and such probability is known to the actor. * * *
 {¶ 18} "` * * * "Wilful misconduct" imports a more positive mental condition prompting an act than does the term "wanton misconduct." "Wilful misconduct" implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. * * *'" (Citations omitted.) Peoples v. Willoughby (1990),70 Ohio App.3d 848, 851, quoting Tighe v. Diamond (1948),149 Ohio St. 520, 526-527. See, also, Rapisarda v. Chagrin Valley AthleticClub Inc., 11th Dist. No. 2001-G-2332, 2001-Ohio-8821, 2001 Ohio App. LEXIS 5648, at 9.
 {¶ 19} We must also distinguish negligent actions from willful or wanton misconduct, as negligence is afforded immunity under R.C. 4765.49(A). First, with respect to wanton misconduct, it is axiomatic that "`mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.'" Fabrey v.McDonald Village Police Dept., 70 Ohio St.3d 351, 356,1994-Ohio-368, quoting Roszman v. Sammett (1971),26 Ohio St.2d 94, 96-97. Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. Cobb v. Mantua Twp. Bd. ofTrustees, 11th Dist. No. 2000-P-0127, 2001-Ohio-8722, 2001 Ohio App. LEXIS 5662, at 16. As for willful misconduct, we note that "[t]he difference between negligence and willfulness is a difference in kind and not merely a difference in degree, and, accordingly, negligence cannot be of such degree as to become willfulness." Roszman at
96.
 {¶ 20} After reviewing the evidence in a light most favorable to appellant, we conclude that the trial court correctly granted appellee summary judgment. The evidence appellant relies upon does not create a genuine issue of material fact concerning whether the paramedics actions constituted willful or wanton misconduct.
 {¶ 21} Although Officer Paterniti's statements may create a genuine issue of material fact regarding the possible negligence of the paramedics in failing to immediately administer defibrillation, the statements fail to show that appellee acted in a willful or wanton manner. Specifically, his statements fail to confirm that any absence of a defibrillator in the first ambulance, or any failure of a paramedic to use the defibrillator, was willful or wanton. Appellant had the burden to show that any such omission was more than simple negligence. Appellant has simply failed to present any evidence that there was an absence of all care for the safety of others or a disposition to perversity. Furthermore, Officer Paterniti's statements fail to establish that appellee intentionally deviated from a clear duty or from a definite rule of conduct. Thus, his testimony did not include evidence demonstrating that appellee's actions were more than negligence and actually constituted willful or wanton misconduct.
 {¶ 22} Vogelsang's affidavit is subject to the same analysis. Moreover, even if her statement somehow rose above the negligence standard, the trial court correctly found that it was based upon inadmissible hearsay. Thus, it could not be considered when determining whether summary judgment was warranted. The Supreme Court of Ohio has held that "[o]nly facts which would be admissible in evidence can be relied upon by the trial court when ruling upon a motion for summary judgment." Tokles Son, Inc.v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 631, fn. 4.
 {¶ 23} Further, Vogelsang's statement could not be qualified as an excited utterance because she could not identify the declarant. As a result, there was no way of assessing what the declarant observed or his or her state of mind when he or she made the comment. See, e.g., State v. Huertas (1990),51 Ohio St.3d 22, 31, quoting Potter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus, (holding that "[t]o be admissible under Evid.R. 803(2) as an excited utterance, a statement must concern `some occurrence startling enough to produce a nervous excitement in the declarant,' which occurrence the declarant had an opportunity to observe, and must be made `before there had been time for such nervous excitement to lose a domination over his reflective faculties. * * *'").
 {¶ 24} Similarly, the absence of a rhythm strip correlating to the first attempts does not create a genuine issue of material fact as to the existence of conduct beyond negligence.[2]
As previously indicated, even if the first team of paramedics failed to use or have a defibrillator, that is not per se evidence of willful or wanton conduct.
 {¶ 25} The foundation of appellant's expert-witness testimony was based upon a review of medical records demonstrating a delay between the time the first team of paramedics arrived and the time of the first recorded rhythm strip. Based upon these facts the expert witness concluded that the failure to promptly use a defibrillator constituted "deliberate" willful and wanton conduct and deprived decedent of a reasonable chance of survival. Again, we note that such testimony does not assist appellant in proving that appellee's actions were more than simple negligence.
 {¶ 26} Appellant fails to recognize that expert-witness testimony stating that the actions of appellee were "deliberate" willful or wanton conduct does not create any issue of fact, but merely states appellant's position with respect to appellee's culpability, which is a legal conclusion. See, e.g., Hackathornv. Preisse (1995), 104 Ohio App.3d 768, 772. Clearly, the determination of whether appellee's conduct was willful or wanton was the ultimate question for resolution. This issue was not of such a highly technical nature to be beyond the comprehension of an average juror. Rather, the determination of willful and wanton conduct turns upon whether the evidence demonstrated that appellee's actions intentionally deviated from a standard of care or established an absence of all care for the safety of others. Thus, because a fact-finder is capable of reaching this conclusion without an expert-witness opinion, appellant's expert-witness testimony would be inadmissible at trial and, therefore, could not be relied upon in a summary judgment action. See, e.g., McQueen v. Goldey (1984), 20 Ohio App.3d 41, 47, (holding that expert-witness testimony expressing an opinion as to the ultimate fact before a jury is inadmissible unless the determination of such ultimate fact requires the application of expert knowledge not within the common knowledge of the jury).
 {¶ 27} Furthermore, appellant's expert-witness testimony stating that appellee's actions were "deliberate" willful and wanton conduct is purely speculative. First, appellant's expert witness expressly testified that he did not know the legal definition of willful and wanton conduct. In addition, his opinion was based solely upon a review of medical records demonstrating an absence of a timely rhythm strip. The absence of a timely rhythm strip, standing alone, fails to demonstrate willful or wanton conduct. As such, appellant's expert witness did not have the proper legal or factual foundation to support his opinion.
 {¶ 28} Based on the foregoing analysis, appellant has failed to present any evidence that would create a genuine issue of material fact regarding whether appellee's actions were willful or wanton misconduct. As such, appellee is entitled to immunity under R.C. 4765.49(A). Appellant's sole assignment of error has no merit. The judgment of the trial court, therefore, is affirmed.
Judgment affirmed.
Rice, J., concurs in judgment only.
O'Neill, J., dissents with dissenting opinion.
[1] Both parties filed additional briefs in support of their respective positions.
[2] A rhythm strip is generated when a paramedic, using the unit's paddles, "captures" the person's heart rhythm before actually defibrillating.