**KALAN, Appellant,**

v.

**FOX, Appellee, et al.**

[Cite as *Kalan v. Fox,* 187 Ohio App.3d 687, 2010-Ohio-2951.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 2009–G–2936.

Decided June 25, 2010.

Novak, Robenalt & Pavlik, L.L.P., Michelle D. Bogle, and William J. Novak, for appellant.

Davis and Young and William Vance, for appellee.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellant, Mary Kalan, appeals from the final judgment of the Geauga County Court of Common Pleas awarding summary judgment in favor of appellee, Adrienne Fox, and others. For the reasons discussed below, the judgment of the trial court is reversed, and the matter is remanded for further proceedings.

{¶ 2} On June 17, 2007, appellant and appellee were members of opposing teams competing in a recreational game of softball through the Mentor Women's Softball League. Appellant was playing catcher when appellee attempted to score from third base. In an effort to protect home plate, appellant stood just inside the baseline stretching from home to third. Appellant testified that appellee was between three and five feet away when she caught the ball to make the tag. As appellee approached home, she collided with appellant. The collision

knocked appellant to the ground, causing her injuries that required hospitalization.

{¶ 3} There was disputed testimony regarding the nature of the contact at home plate. Appellant alleged that appellee tucked her shoulder and "barreled" into her. Appellant's testimony was corroborated by a fellow player and witness to the incident, Patricia Miller. Alternatively, appellee testified that she did not charge into appellant, but slid head first into home. Appellee specifically stated, "At some point, I slid. And when I slid, I tried to go around her, I do know that, and we collided somewhere. I don't know where we collided in terms of where I hit her or what on me hit her, because I don't know." Appellee's version was corroborated by Thomas Warder, the game's umpire; Helen Hayes, the manager of appellant's team; and Dina Ashworth, the pitcher for appellant's team.

{¶ 4} As a result of the injuries appellant suffered from the collision with appellee, appellant filed suit against appellee and others, alleging negligence and/or reckless conduct in the course of a game of women's softball.[1] The complaint further alleged that appellee's conduct was outside the rules of the game, thereby creating an unreasonable risk of physical harm to appellant. Appellee duly answered the complaint, denying each allegation.

{¶ 5} On August 7, 2009, appellee moved for summary judgment, arguing that the recreational-use doctrine precluded recovery for injuries suffered by participants in a sporting event unless those injuries were occasioned by the reckless or intentional conduct of another participant. Appellee asserted that there was no evidence indicating that she acted either recklessly or intentionally, and thus she was entitled to judgment as a matter of law.

{¶ 6} In her memorandum in opposition, appellant claimed that appellee's conduct stood in violation of a clearly delineated safety rule. In support, appellant cited Amateur Softball Association Rule 13, which provides:

{¶ 7} "In an effort to prevent injury and protect a defensive player attempting to make a play on a runner, a runner must be called out when they remain on their feet and crash into a defensive player who is holding the ball and waiting to apply a tag. To prevent the out ruling, the runner may slide, jump over the defender holding the ball, go around the defender or return to the previous base touched. If the act is determined to be flagrant the offender is ejected. A runner may slide into a fielder."

---

1.  The complaint also alleged negligence on behalf of the city of Mentor for its failure to ensure that the rules and customs established by the Mentor Women's Softball League were consistently enforced. That portion of the lawsuit was settled. As a result, the city is not a party to this appeal.

{¶ 8} To the extent that appellee violated an established rule of the game, appellant argued that her actions could not be viewed as a customary practice and, as a result, could not be foreseeable. Under such circumstances, appellant argued, a negligence analysis is appropriate and, given her allegations that appellee "barreled" into her, she submitted enough evidence to overcome appellee's motion for summary judgment. Moreover, and regardless of the negligence claim, appellant countered appellee's recreational-use argument by pointing out that her allegations demonstrated that appellee's conduct was enough to create a triable issue on her claim of recklessness.

{¶ 9} On October 19, 2009, the trial court awarded summary judgment in appellee's favor, ruling that there was no genuine issue of material fact indicating that appellee's conduct was either reckless or intentional. The court did not explicitly rule on appellant's negligence claim; however, given its silence, we shall presume that appellant's argument was overruled.

{¶ 10} Appellant now appeals, asserting two assignments of error. Because each assignment of error challenges the trial court's grant of summary judgment, we shall first set forth our standard of review.

{¶ 11} Summary judgment is a procedural tool that terminates litigation and therefore should be awarded with great caution. *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 66, 609 N.E.2d 144. Keeping this in mind, an award of summary judgment is proper when (1) there is no genuine issue of material fact remaining to be litigated, (2) the movant is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence in favor of the nonmovant, that conclusion favors the moving party. Civ.R. 56(C); see also *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 12} Upon filing a motion pursuant to Civ.R. 56, the movant has the initial burden of providing the trial court with a basis for the motion and is required to specifically identify portions of the record demonstrating the absence of genuine issues of material fact pertaining to the nonmovant's cause of action. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the movant meets its prima facie burden, the burden then shifts to the nonmovant to set forth specific facts that would establish a genuine issue for trial. Id. With respect to evidential quality, the movant cannot discharge its initial burden under Civ.R. 56 simply by making a blank assertion that the nonmovant has no evidence to prove its case, but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C). *Dresher.* Similarly, the nonmovant may not rest on conclusory allegations or denials contained in the pleadings; rather, he or she must submit evidentiary material sufficient to create a genuine dispute over material facts at issue. Civ.R. 56(E); see also *Dresher.*

{¶ 13} A reviewing court must adhere to the same standard employed by the trial court. In the parlance of appellate law, we review an award of summary judgment de novo. See, e.g., *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. That is, an appellate court considers the entire record and accords the trial court's determination on summary judgment no deference. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. If, upon review, there is a sufficient disagreement on a material issue of fact such that the case cannot be resolved as a matter of law, an award of summary judgment must be reversed and the cause submitted to a jury. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 14} With this in mind, appellant's first assignment of error alleges:

{¶ 15} "The trial court committed reversible error by sustaining [appellee's] motion for summary judgment without even conducting the required negligence analysis where [appellant] presented evidence sufficient to create a genuine issue of material fact that [appellee's] conduct was not a customary practice of playing softball, and was therefore not a foreseeable and ordinary risk of the game."

{¶ 16} Under her first assignment of error, appellant argues that the trial court erred in failing to consider her negligence claim. Appellant contends that the court was required to engage in a negligence analysis when, as here, evidence was presented that the conduct at issue was not within the ordinary risk of the game. If the court had considered her argument, appellant maintains it would have been bound to overrule appellee's motion. Before addressing the merits of appellant's contention, we shall set forth the governing law in this area.

{¶ 17} In *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699, the Supreme Court of Ohio held:

{¶ 18} "Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d." *Marchetti* at syllabus.

{¶ 19} The same year that case was decided, the court approved, followed, and amplified the *Marchetti* analysis in *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, holding:

{¶ 20} "1. Between participants in a sporting event, only injuries caused by intentional conduct, or in some instances reckless misconduct, may give rise to a

cause of action. There is no liability for injuries caused by negligent conduct. * * *

{¶ 21} "2. A player who injures another player in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct." *Thompson* at paragraphs one and two of the syllabus.

{¶ 22} Based upon the foregoing, when individuals participate in recreational or sports activities, they assume the ordinary, foreseeable risks of those activities. When injuries result from such risks, courts must apply a recklessness standard. When, on the other hand, an injury is occasioned by conduct that is not an actual or customary part of the sport (i.e., conduct causing unforeseeable risks), a negligence standard is applied. See, e.g., *Coblentz v. Peters*, 11th Dist. No. 2004–T–0017, 2005-Ohio-1102, 2005 WL 583793, at ¶ 20–21.

{¶ 23} Appellant argues that appellee's act of "barreling" into her, a breach of the formal rules, was not an actual part of the sport of softball. Consequently, the court should have applied a negligence standard. In support, she cites this court's decision in *Aquila v. Lamalfa*, 11th Dist. No. 2005–L–148, 2007-Ohio-689, 2007 WL 1125724.

{¶ 24} In *Aquila*, the plaintiff sustained injuries when he and the defendant collided during a potato-sack race. The plaintiff sued the defendant, arguing in the alternative that the defendant negligently caused his injuries, recklessly caused his injuries, or intentionally caused his injuries. The trial court awarded the defendant summary judgment on the plaintiff's negligence and intentional-tort claims. The plaintiff's recklessness claim was tried to a jury, who returned a verdict in favor of the defendant. The plaintiff appealed the trial court's award of summary judgment on the negligence claim. This court subsequently reversed the judgment of the trial court and remanded the matter, holding that the collision during the sack race did not involve conduct that was an "actual part of the game," and thus was not foreseeable:

{¶ 25} " 'Intentional tackling' is not a customary part of the sport or activity of sack racing. The activity of sack racing does not include being intentionally tackled by an errant, although well-meaning, participant, and is not foreseeable conduct. Sack racing is not a contact sport or activity. * * *

{¶ 26} " * * *

{¶ 27} "It is clear from the record that this 'roughhousing' between two grown men was done in a spirit of childlike competition between cousins, which unfortunately due to their respective ages and physical limitations, may negligently have caused some serious damage." Id. at ¶ 16–18.

{¶ 28} *Aquila* is distinguishable from this case. Unlike tackling a fellow sack racer, hard physical contact between a catcher and a runner attempting to score a run is an ordinary risk of the sport of softball. Indeed, appellant, during her deposition, conceded that softball is a contact sport in which any participant "could encounter contact at any point." She further acknowledged that physical contact between a runner and a catcher is "one of the parts of the game." In *Aquila*, this court underscored that its holding was a function of its application of the "actual part of the game test." Because some amount of physical contact can be expected in softball, we hold that the analysis in *Aquila* is inapposite to this case.

{¶ 29} Still, appellant's negligence argument hinges upon her allegation that appellee's conduct violated a specific rule of the game and therefore cannot be deemed foreseeable. We disagree.

{¶ 30} Even if physical contact violates a rule of a contact sport, such as softball, and could potentially subject the violator to internal sanctions prescribed by the sport itself, we hold that rule infractions, deliberate or unintentional, are almost inevitable in contact sports. Because certain contact between participants in a softball game, whether by slide, tag, or even collision, is an ordinary part of the game, a negligence analysis is inappropriate under such circumstances. Accordingly, even though the trial court did not consider appellant's negligence argument, we find no error.

{¶ 31} Appellant's first assignment of error is overruled.

{¶ 32} Appellant's second assignment of error alleges:

{¶ 33} "The trial court committed reversible error in sustaining [appellee's] motion for summary judgment where a genuine issue of material fact existed that [appellee's] conduct was at least reckless, if not intentional."

{¶ 34} In *Marchetti*, 53 Ohio St.3d 95, 559 N.E.2d 699, the Supreme Court concluded that participants in recreational or sporting activities cannot recover for injuries that result from foreseeable risks unless the other participant's actions were either "reckless" or "intentional" as defined by the Restatement of Torts 2d. Appellant did not allege that appellee intentionally injured her; rather, she claimed the injury was occasioned by appellee's reckless conduct. In relation to this allegation, the Restatement of Torts 2d, Section 500, provides:

{¶ 35} "The actor's conduct is in reckless disregard of the safety of another if he [or she] does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable [person] to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

{¶ 36} As discussed above, there were conflicting accounts of the nature of the collision between appellee and appellant. Several deponents, including appellee, testified that appellee slid head first into home. In doing so, these individuals indicated that appellee incidentally collided with appellant, knocking the latter down and causing injury. However, appellant testified that instead of sliding, appellee charged toward home plate, "lowered her shoulder and barreled into [her]." Appellant testified that she was certain appellee was on her feet when the collision occurred. Furthermore, Patricia Miller, who was playing third base for appellant's team at the time of the collision, testified:

{¶ 37} "[Appellee], who was the runner, was running home. The ball was thrown in to [appellant]. [Appellant] was about, I'd say, three feet in front of the play, getting ready—she should have given up because I could count one, two, three, is how long [appellant] had that ball in her hand. All she was doing was trying to tag her.

{¶ 38} "And [appellee] came in like—I'll show you what she did. It was flagrant. She came in like this, threw an elbow and knocked [appellant] back on to home plate."

{¶ 39} Miller also unequivocally stated that appellee was on her feet and "throwing her shoulder" when she struck appellant.

{¶ 40} Notwithstanding the factual inconsistencies in the evidence, the trial court granted appellee summary judgment. In doing so, the trial court observed:

{¶ 41} "The only evidence before the Court that Defendant Fox acted intentionally or recklessly is the testimony of Plaintiff. While a Court is not permitted to weigh the evidence in considering a motion for summary judgment, the Court is not required to accept a party's interpretation of the evidence presented. In this instance, Plaintiff contends that Defendant Fox looked her in the eye, lowered her shoulder, and barreled into her. Evidence presented by Defendant through her own deposition and that of other players is that Defendant left her feet, slid face forward, and collided with Plaintiff.

{¶ 42} " * * *

{¶ 43} "Defendant Fox's Motion for Summary Judgment is sustained."

■ {¶ 44} It is fundamental that in considering a motion for summary judgment, a trial court "may not weigh the proof or choose among reasonable inferences." *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 121, 18 O.O.3d 354, 413 N.E.2d 1187. Furthermore, it is not the place of the trial court to accept one party's interpretation of that evidence over another. *Donlin v. Rural Metro Ambulance, Inc.*, 11th Dist. No. 2002–T–0148, 2004-Ohio-1704, ¶ 37. To the contrary, in ruling on a motion for summary judgment, all "[d]oubts must

be resolved in favor of the non-moving party." *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138.

{¶ 45} Although the trial court properly acknowledged that it could not weigh the evidence, its judgment entry demonstrates that it chose to believe appellee's version of events over appellant's. Appellant's rendition, however, which is supported by the independent testimony of another witness, if believed, supports the reasonable inference that appellee acted in reckless disregard for the safety of appellant as defined by the Restatement of Torts 2d, Section 500. Accordingly, the trial court erred in granting summary judgment in appellee's favor on the issue of recklessness.

{¶ 46} In competitive activities, the goal is to win. In sporting events, especially those played by teams and involving some degree of physical contact, such as softball, it is foreseeable that the competitive spirit of the participants will cause some rule infractions, as well as injuries. While it may seem that there should be a legal remedy for every "wrong," it is essential that the law avoid interfering too greatly or placing unreasonable burdens on the free and vigorous participation in sports and recreational activities. After all, every injury for which the law provides redress has ramifying consequences.

{¶ 47} Nevertheless, when a participant in a sporting event harms another with reckless disregard for that person's safety or with specific intent to injure, Ohio law affords the injured party the possibility of a civil remedy. Here, appellant has set forth adequate evidence to create an issue for trial regarding appellee's recklessness. In particular, we hold that there is a genuine issue of material fact that remains to be litigated regarding whether appellee permissibly slid or recklessly "barreled" into appellant.

{¶ 48} Appellant's second assignment of error is sustained.

{¶ 49} While appellant's first assignment of error is overruled, her second assigned error is well taken. Thus, it is the order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for further proceedings.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

TRAPP, J., concurs.

O'TOOLE, J., concurs in part and dissents in part.

COLLEEN MARY O'TOOLE, Judge, concurring in part and dissenting in part.

{¶ 50} I concur in the majority's disposition of appellant's first assignment of error: no cause of action for negligence is possible in this case. However, based on the decision of the Supreme Court of Ohio in *Topola v. Wisniewski* (1990), 55 Ohio St.3d 30, 562 N.E.2d 891, reversing that of the Eighth District Court of Appeals in *Topola v. Wisniewski* (Apr. 5, 1990), 8th Dist. No. 56735, 1990 WL 40268, I would affirm the trial court on the second assignment of error.

{¶ 51} In *Topola*, the appellant, the catcher, and his wife brought an action for personal injuries and loss of consortium based on alleged recklessness of appellee (the base runner) during a company league softball game. Id. at *1–3. The legally significant facts are indistinguishable from those presented by the case before us:

{¶ 52} "The plaintiff testified that he was the catcher for his team during the game. His injury occurred during a play at the plate with the defendant who was a base runner advancing from third base on an apparent sacrifice fly ball. The plaintiff testified that on the play the batter hit to right field. The right fielder threw the ball to the plaintiff and the defendant then headed for home plate. The plaintiff testified that the defendant was approximately 30 feet from home plate when he caught the ball. He stated that he caught the ball two feet from home plate on the third base side and then straddled the base line in order to tag the runner out. The plaintiff claimed that the defendant, rather than slowing down, accelerated his pace. A couple of feet from the plaintiff, the defendant leaped into the air feet first, and with a karate-kick like motion, drove his feet into the plaintiff's left leg, striking and breaking it between his ankle and knee. The plaintiff claimed that although the defendant struck him feet first, the defendant was not attempting to slide when the contact occurred. He further claimed that league rules required base runners to slide under these circumstances or they would be out." *Topola*, 1990 WL 40268, at *1.

{¶ 53} Based on the foregoing facts, the trial court granted the appellee summary judgment on the appellant's recklessness claim. *Topola* at *1. The Eighth District reversed and remanded on the authority of the Ninth District Court of Appeal's decision in *Marchetti v. Kalish* (June 21, 1989), 9th Dist. No. 13890, 1989 WL 69726: the case underlying the Supreme Court of Ohio's decision in *Marchetti*, 53 Ohio St.3d 95, 559 N.E.2d 699. *Topola* at *3. It held that there was a genuine issue of material fact as to whether the appellee's alleged failure to follow the league rule prohibiting running into a catcher, rather than sliding into him or her, was reckless. Id. at *3.

{¶ 54} The Supreme Court of Ohio granted a motion to certify the record in *Topola*, 1990 WL 40268, and reversed the judgment of the Eighth District on the authority of *Marchetti*, 53 Ohio St.3d 95, 559 N.E.2d 699, and *Thompson*, 53 Ohio

St.3d 102, 559 N.E.2d 705.  *Topola v. Wisniewski,* 55 Ohio St.3d 30, 562 N.E.2d 891.

{¶ 55} In this case, as in the *Topola* matter, a base runner allegedly failed to observe a rule of the game by running into, rather than sliding into, a catcher already holding the ball for a tag.  I would find the decision of the Supreme Court of Ohio in *Topola,* 55 Ohio St.3d 30, 562 N.E.2d 891, controlling and would hold that appellant failed to state a cause of action for recklessness.

{¶ 56} I respectfully dissent.