[Cite as *Superior Mobile Homes, Inc. v. Massasauga Rattlesnake Ranch, Inc.*, 2023-Ohio-3764.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| SUPERIOR MOBILE HOMES, INC., | **CASE NO. 2023-T-0004** |
| Plaintiff, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| MASSASAUGA RATTLESNAKE RANCH, INC., et al., | Trial Court No. 2017 CV 01611 |
| Defendant-Third Party Plaintiff-Appellee, | |
| ESTATE OF RUSSELL L. MILLER, JR., | |
| Third Party Defendant-Appellant. | |

# O P I N I O N

Decided: October 16, 2023
Judgment: Affirmed in part and reversed in part; remanded

*Max E. Dehn*, Cavitch Familo & Durkin, Co., LPA, 1300 East 9th Street, 20th Floor, Cleveland, OH 44114 (For Defendant-Third Party Plaintiff-Appellee).

*Paul Giorgianni*, Giorgianni Law LLC, 1538 Arlington Avenue, Columbus, OH 43212; and *David P. Weimer*, Weimer Law Firm, LLC, 1790 Town Park Boulevard, Suite B, Uniontown, OH 44685 (For Third Party Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, the Estate of Russell L. Miller, Jr. ("Mr. Miller"), appeals the following judgments of the Trumbull County Court of Common Pleas: (1) the November 13, 2019, judgment entry overruling Mr. Miller's motion for summary judgment on the

claim for breach of fiduciary duty filed against him by appellee, Massasauga Rattlesnake Ranch, Inc. ("Massasauga"); (2) the January 29, 2020, judgment entry granting summary judgment to Massasauga on its claim against Mr. Miller for breach of fiduciary duty; and (3) the December 19, 2022, judgment entry overruling Mr. Miller's objections to the magistrate's decision, adopting the magistrate's decision, and awarding damages to Massasauga in the amount of $478,431.27.

{¶2} This matter involves whether Mr. Miller, as Massasauga's corporate secretary, breached his fiduciary duty by executing a cognovit promissory note payable to Superior Mobile Homes, Inc. ("Superior"). Mr. Miller asserts two assignments of error, contending the trial court erred (1) by overruling his motion for summary judgment against Massasauga and (2) by awarding damages to Massasauga in the amount of $478,431.27 instead of $17,149.50. Mr. Miller also asserts a third "conditional" assignment of error, contending (3) the trial court erred by granting summary judgment to Massasauga.

{¶3} We review Mr. Miller's assignments of error chronologically to avoid the issuance of advisory rulings. After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The trial court did not err by overruling Mr. Miller's motion for summary judgment. Although the trial court erred in construing the authority granted to Mr. Miller under certain corporate resolutions, there was a genuine issue of material fact regarding the validity of the underlying debt.

{¶5} (2) The trial court erred in granting Massasauga's motion for summary judgment since its ruling was based on its erroneous construction of the corporate resolutions.

2

**{¶6}** Thus, we affirm the trial court's November 13, 2019, judgment overruling Mr. Miller's motion for summary judgment and reverse the trial court's January 29, 2020, judgment granting summary judgment to Massasauga. Consequently, we also reverse the trial court's December 19, 2022, judgment awarding damages to Massasauga and remand this matter for trial. Our dispositions of Mr. Miller's first and third assignments of error render his second assignment of error moot.

## Substantive and Procedural History

**{¶7}** Charles Sr. formed Superior in 1972 for the purpose of owning and operating mobile home parks. Beginning in the 1990s until 2014, Mr. Miller provided accounting and bookkeeping services to Superior and served on its board of directors and as its corporate secretary.

**{¶8}** Charles Sr. formed Massasauga in 2000 to purchase real estate for use as hunting property by himself and his two sons, Timothy Matthews ("Timothy") and Charles Matthews, Jr. ("Charles Jr."). From its formation until 2014, Mr. Miller provided accounting and bookkeeping services to Massasauga and served on its board of directors and as its corporate secretary.

**{¶9}** Timothy and Charles Jr. took over control of Massasauga in 2012. Pursuant to director resolutions dated September 1, 2012, and September 1, 2013, Massasauga elected Charles Jr. as president; Timothy as vice president and treasurer; and Mr. Miller as secretary. The resolutions further state (1) "the President *or* Secretary of this corporation may at their sole discretion execute the following: * * * To represent the corporation in any and all *legal contracts* of any nature," and (2) "the President *and* Secretary of this corporation must jointly agree and execute the following: * * * Open

3

and/or transact any *bank accounts, loans or other banking transactions* as he deems necessary." (Emphasis added.)

{¶10} Purportedly on December 31, 2013, Mr. Miller, as Massasauga's secretary, executed a cognovit promissory note payable to Superior, upon demand, in the principal amount of $772,661.43, plus interest at 4% ("the 2013 note").

{¶11} Timothy died in 2014, and Charles Jr. assumed sole control over both companies. Through his attorney, Charles Jr. sent a letter to Mr. Miller terminating his services and ordering him to produce the companies' books and records. According to Charles Jr., when Mr. Miller finally produced the books and records in 2015, a copy of the 2013 note was not included.

{¶12} In 2017, a third party purchased 95% of Superior's outstanding shares. Superior's new president would later testify that, after the stock sale, Mr. Miller alerted the company to the 2013 note's existence and produced a copy.

{¶13} Superior filed a complaint against Massasauga in the trial court to obtain judgment on the 2013 note (case no. 2017 CV 01611). The trial court granted judgment to Superior for the full amount of the 2013 note, plus interest and costs.

{¶14} Massasauga filed a motion for relief from judgment pursuant to Civ.R. 60(B), contending Mr. Miller lacked authority to sign the 2013 note and that the note was "fraudulent" because it did not reflect an actual debt Massasauga owed to Superior. Before the trial court ruled on its Civ.R. 60(B) motion, Massasauga filed a separate complaint against Mr. Miller (case no. 2017 CV 02258), alleging he breached his fiduciary duty by executing the 2013 note "without proper cause and authority" and by failing to

4

provide its documents upon request.  Massasauga alleged it was harmed by Superior's cognovit judgment and by having to incur fees and costs in seeking relief from it.

{¶15}  The trial court subsequently granted Massasauga's Civ.R. 60(B) motion and vacated the cognovit judgment.

{¶16}  Superior amended its complaint to assert various other claims against Massasauga and Charles Jr.  Charles Jr. filed a counterclaim.  The trial court consolidated the two cases.

{¶17}  Mr. Miller filed a motion for summary judgment on Massasauga's claim against him for breach of fiduciary.  Mr. Miller contended the 2013 note merely reflected an existing loan balance Massasauga owed to Superior relating to the 2000 purchase of the hunting property.  In an affidavit, Mr. Miller averred that Superior obtained a bank loan for $1,200,000, and, in turn, loaned those funds to Massasauga to purchase the real estate.  Superior and Massasauga entered into a loan agreement and a cognovit note to memorialize the transaction.  Over the years, Massasauga made payments to Superior from funds it generated selling/leasing oil and gas interests and conservation easements.  Massasauga periodically executed and delivered new cognovit notes that set forth the amount due, including accrued interest.  Each year, the amount of the loan and the interest paid were reflected on both companies' tax returns.  Mr. Miller also contended there was no causal connection between his alleged actions (i.e., executing the 2013 note and failing to turn over documents) and the attorney fees Massasauga incurred in defending against Superior's claims; rather, Superior sued Massasauga for defaulting on its contractual obligations.

5

{¶18} Massasauga filed a memorandum in opposition. It argued the 2013 note constituted a "loan" under the 2013 director resolutions. Therefore, Mr. Miller breached his fiduciary duty because he lacked authority to execute the 2013 note without Charles Jr.'s accompanying signature. Massasauga also disputed Mr. Miller's explanation of the circumstances underlying the 2013 note, asserting it was "false." In an affidavit, Charles Jr. averred that at the time Mr. Miller executed the 2013 note, Massasauga did not owe Superior a debt of $772,661.43. He further averred that the companies' corporate records did not reveal the existence of a loan for the purchase of the hunting property; there were no "valid instruments" to support "any entries" on the companies' respective tax returns or account ledgers relating to the alleged debt; and he was not aware of the 2013 note's existence until Superior filed suit against Massasauga. Finally, Massasauga contended there was a causal connection between Mr. Miller's execution of the 2013 note and its damages because Superior specifically filed suit to recover under it.

{¶19} Mr. Miller filed a reply brief. He contended the 2013 director resolutions expressly authorized him to execute the 2013 note without Charles Jr.'s accompanying signature because it involved a "legal contract" instead of a "bank account, loan or other banking transaction."

{¶20} On November 13, 2019, the trial court filed a judgment entry denying Mr. Miller's motion for summary judgment. The trial court found Massasauga satisfied all of the required elements for a breach of fiduciary claim. Specifically, Mr. Miller, as a corporate director, owed a fiduciary duty to Massasauga; he breached that duty because he lacked authority under the 2013 director resolutions to execute the 2013 note without

6

Charles Jr.'s accompanying signature; and Massasauga "incurred legal fees and costs in defending against the 2013 Cognovit Note in the action involving Superior."

**{¶21}** Superior and Massasauga/Charles Jr. filed cross-motions for summary judgment. The trial court filed judgment entries granting Massasauga/Charles Jr.'s motion for summary judgment on Superior's claims and granting Superior's motion for summary judgment on Charles Jr.'s counterclaim. These rulings ended Superior's involvement in the case.

**{¶22}** Massasauga filed a motion for summary judgment on its claim against Mr. Miller for breach of fiduciary duty, which Mr. Miller opposed. Massasauga's motion was based on the trial court's express findings in the November 2019 entry overruling Mr. Miller's motion for summary judgment. On January 29, 2020, the trial court filed a judgment entry granting Massasauga's motion for summary judgment. The trial court set the matter for an evidentiary hearing "to determine the amount of damages to which Massasauga is entitled * * * as a result of [Mr.] Miller's breach of fiduciary duty."[1]

**{¶23}** Mr. Miller died prior to the evidentiary hearing, and his estate was substituted in his place. The magistrate presided over the damages hearing and heard testimony from witnesses and videotaped testimony from Mr. Miller. The magistrate filed a decision in which it found Mr. Miller's conduct rose to the level of "reckless disregard" and determined he was liable to Massasauga for $478,431.27 in attorney fees and costs it incurred in the underlying litigation.

---

1. Neither party nor the trial court identified the legal authority permitting Massasauga to recover damages against Mr. Miller consisting entirely of its legal fees and expenses incurred in defending against Superior's claims.

7

{¶24} Mr. Miller filed objections to the magistrate's decision, which Massasauga opposed. On December 19, 2022, the trial court filed a judgment entry in which it overruled Mr. Miller's objections, adopted the magistrate's decision, and awarded judgment to Massasauga in the amount of $478,431.27.

{¶25} Mr. Miller appealed and raises the following two assignments of error:

{¶26} "[1.] The trial court erred by overruling Miller's motion for summary judgment.

{¶27} "[2.] The trial court erred by awarding Massasauga $478,431.27 in damages instead of $17,149.50 in damages."

{¶28} Mr. Miller also raises the following "conditional" third assignment of error:

{¶29} "[3.] The trial court erred by entering summary judgment against Miller."

## "Conditional" Review

{¶30} Before addressing the merits of Mr. Miller's assignments of error, we must address the unusual manner in which he presents them. Mr. Miller requests that we consider his "conditional" third assignment of error only if we overrule his first assignment of error and also decline to enter judgment against him for $17,396.50 or less pursuant to his second assignment of error. According to Mr. Miller, he would prefer an adverse judgment up to that amount over additional civil proceedings.

{¶31} Mr. Miller cites no authority permitting an appellant to raise a "conditional" assignment of error. In addition, reviewing Mr. Miller's assigned errors in the manner he requests could result in this court issuing advisory rulings. For instance, Mr. Miller asks us to reduce the trial court's damages award against him, but if we disagree with his arguments, then he asks us to overturn the trial court's summary judgment ruling on

8

liability. "It is well settled that appellate courts do not indulge in advisory opinions." *Furbee v. Bittner*, 11th Dist. Lake Nos. 2014-L-077, et al., 2015-Ohio-4425, ¶ 36. Instead, "it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect." *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). To avoid the possibility of issuing advisory rulings, we consider Mr. Miller's assignments of error chronologically—i.e., first (denial of summary judgment to Mr. Miller); third (grant of summary judgment to Massasauga); and second (amount of damages).

### Summary Judgment - Mr. Miller

**{¶32}** In his first assignment of error, Mr. Miller contends the trial court erred by overruling his motion for summary judgment on Massasauga's claim against him for breach of fiduciary duty.

**{¶33}** Generally, the denial of summary judgment is not a final, appealable order. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. However, a denial of a motion for summary judgment is always reviewable on appeal following a subsequent final judgment. *Knight v. Altercare Post-Acute Rehab. Ctr., Inc.*, 2017-Ohio-6946, 94 N.E.3d 957, ¶ 27 (11th Dist.).

**{¶34}** We review summary judgment de novo, i.e., independently and without deference to the trial court's decision. *Hedrick v. Szep*, 11th Dist. Geauga No. 2020-G-0272, 2021-Ohio-1851, ¶ 13. Summary judgment is appropriate only when (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds

9

Case No. 2023-T-0004

can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.  Civ.R. 56(C).

{¶35}  "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.'  The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party." *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 40.

{¶36}  Specifically, "the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.  The evidence must be in the record or the motion cannot succeed.  The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.*

{¶37}  "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied.  If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial.  If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party * * *." *Id.*

{¶38}  The essential elements of a claim of breach of fiduciary duty are (1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty,

10

and (3) an injury resulting proximately therefrom. *Jochum v. Howard Hanna Co.*, 11th Dist. Lake No. 2020-L-077, 2020-Ohio-6676, ¶ 42. Mr. Miller does not dispute he owed a fiduciary duty to Massasauga. He challenges whether there was a breach and whether any such breach caused Massasauga's alleged damages.

{¶39} On appeal, Mr. Miller argues that the "only basis" for Massasauga's claim against him was that he signed the 2013 note. He contends the 2013 director resolutions authorized him to execute the 2013 note without Charles Jr.'s accompanying signature; therefore, the trial court should have granted his motion for summary judgment.

{¶40} We agree with Mr. Miller's reading of the 2013 director resolutions. As stated, they provide, "the President *or* Secretary of this corporation may at their sole discretion execute the following: * * * To represent the corporation in any and all *legal contracts* of any nature," while "the President *and* Secretary of this corporation must jointly agree and execute the following: * * * Open and/or transact any *bank accounts, loans or other banking transactions* as he deems necessary." (Emphasis added.)

{¶41} Unlike the word "accounts," the word "loans" does not contain an express qualifier, i.e., "bank loans." Therefore, one could argue, as does Massasauga, that the word "loans" encompasses *any* type of loan. However, the plain meaning of the adjoining phrase "other banking transactions" indicates the term "loans" is limited to "bank loans." Specifically, the word "other" means "additional," such as "sold in the U.S. and 14 *other* countries." (Emphasis sic.) Merriam-Webster, https://www.merriam-webster.com/dictionary/other (accessed October 10, 2023). The word "banking" means "the business of a bank or a banker." Merriam-Webster, https://www.merriam-webster.com/dictionary/banking (accessed October 10, 2023). A "bank" is "an

11

establishment for the custody, loan, exchange, or issue of money, for the extension of credit, and for facilitating the transmission of funds." Merriam-Webster, https://www.merriam-webster.com/dictionary/bank (accessed October 10, 2023). Therefore, the word "loans," in context, refers to "bank loans." Consequently, the 2013 director resolutions *did not* require Charles Jr.'s accompanying signature on the 2013 note.

{¶42} Although the trial court erred in construing the 2013 director resolutions, Mr. Miller was not necessarily entitled to summary judgment. The Supreme Court of Ohio has held "where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof." *Agricultural Ins. Co. v. Constantine*, 144 Ohio St. 275, 284, 58 N.E.2d 658 (1944). This is because "reviewing courts affirm and reverse judgments, not the reasons for the judgments." *Geneva v. Fende*, 11th Dist. Ashtabula No. 2009-A-0023, 2009-Ohio-6380, ¶ 33.

{¶43} Contrary to Mr. Miller's assertion, his execution of the 2013 note was not the "only basis" for Massasauga's claim against him. In its complaint, Massasauga also alleged Mr. Miller breached his fiduciary duty by signing the 2013 note "when no valid circumstances for its creation existed and where there was no debt obligation from Massasauga to Superior" and by "not providing Massasauga its documents when they were requested." Mr. Miller acknowledged as much by challenging these allegations in his motion for summary judgment. In opposing Mr. Miller's motion, Massasauga expressly challenged the validity of the underlying debt and submitted Charles Jr.'s conflicting affidavit on the issue. In considering a motion for summary judgment, a trial

12

court may not weigh the proof or choose among reasonable inferences, nor may it accept one party's interpretation of the evidence over another. *Kalan v. Fox*, 187 Ohio App.3d 687, 2010-Ohio-2951, 933 N.E.2d 337, ¶ 44 (11th Dist.). Accordingly, the record presented a genuine issue of material fact regarding the validity of the debt, which precluded summary judgment in Mr. Miller's favor.

{¶44} Alternatively, Mr. Miller contends that even if he breached his fiduciary duty by signing the 2013 note, he was still entitled to summary judgment because his breach was not the "but for" cause of Massasauga's damages, i.e., the attorney fees and costs it incurred in the underlying litigation. According to Mr. Miller, the evidence "proves" Superior would have sued Massasauga on the debt even if the 2013 note never existed.

{¶45} The "evidence" to which Mr. Miller refers consists largely of testimony from Superior's attorney during the evidentiary hearing on damages held in 2021. Obviously, this testimony was not before the trial court when it considered Mr. Miller's motion for summary judgment in 2019. As an appellate court conducting a de novo review, we must stand in the shoes of the trial court and review summary judgment on the same standard and evidence as the trial court. *Westport Ins. Corp. v. Stark Cty. Sanit. Eng. Dept.*, 2017-Ohio-7573, 96 N.E.3d 1256, ¶ 14 (5th Dist.). The record on summary judgment motion does not establish, as a matter of law, that Superior would have sued Massasauga on the debt regardless of the 2013 note.

{¶46} Mr. Miller has not established reversible error. Thus, his first assignment of error is without merit. Accordingly, we affirm the trial court's November 13, 2019, judgment.

**Summary Judgment - Massasauga**

{¶47} In his third assignment of error, Mr. Miller contends the trial court erred in granting summary judgment to Massasauga. Specifically, he contends there were genuine issues of material fact as to whether (1) he was authorized to execute the 2013 note without a co-signature, (2) his execution of the 2013 note was both a "but for" and proximate cause of the attorney fees and costs Massasauga incurred, and (3) he possessed "deliberate intent to cause injury" or "reckless disregard" pursuant to R.C. 1701.59(E).

{¶48} In its motion for summary judgment, Massasauga argued that Mr. Miller breached his fiduciary duty by executing the 2013 note without Charles Jr.'s accompanying signature. Massasauga's reason for asserting this argument was rational, given the trial court's prior findings in denying summary judgment to Mr. Miller. As explained above, however, the trial court erroneously construed the 2013 director resolutions because they authorized Mr. Miller to execute the 2013 note without Charles Jr.'s accompanying signature. Accordingly, the trial court erred by granting summary judgment to Massasauga on this basis. Mr. Miller's third assignment of error has merit, and we reverse the trial court's January 29, 2020, judgment.

{¶49} Upon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred. *State ex rel. Ames v. Portage Cty. Solid Waste Mgt. Dist. Bd. of Commrs.*, 11th Dist. Portage No. 2022-P-0016, 2022-Ohio-2740, ¶ 38. Here, reversible error occurred when the trial court granted Massasauga's motion for summary judgment and found Mr. Miller liable for breach of fiduciary duty. Therefore, we necessarily reverse the trial court's subsequent judgment of December 19, 2022,

14

Case No. 2023-T-0004

awarding damages to Massasauga for that alleged breach. We remand this matter for trial on the issues of liability and, if necessary, the amount of damages.

### Amount of Damages

{¶50} Finally, in his second assignment of error, Mr. Miller contends the trial court erred in awarding damages to Massasauga in the amount of $478,431.27 instead of $17,149.50. Based on our dispositions of Mr. Miller's first and third assignments of error, his second assignment of error is dismissed as moot.

{¶51} For the foregoing reasons, the trial court's November 13, 2019, judgment is affirmed, and the trial court's January 29, 2020, and December 19, 2022, judgments are reversed. This matter is remanded for further proceedings consistent with this opinion.


JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2023-T-0004