[Cite as *Campagna-McGuffin v. Diva Gymnastics Academy, Inc.*, 2022-Ohio-3885.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| ANGELA CAMPAGNA-MCGUFFIN, ET AL | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
|  | : | Hon. Craig R Baldwin, J. |
| Plaintiffs-Appellants | : |  |
|  | : |  |
| -vs- | : | Case No. 2022 CA 00057 |
|  | : |  |
| DIVA GYMNASTICS ACADEMY, INC., ET AL | : |  |
|  | : | OPINION |
| Defendants-Appellees |  |  |

CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of
                              Common Pleas, Case No. 2020CV00936

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       October 31, 2022

APPEARANCES:

For Plaintiffs-Appellants         For Defendants-Appellees

DAVID C. PERDUK                   JUSTIN A. DUBLIKAR
3603 Darrow Road                  KYLE A. CRAMER
Stow, OH 44224                    Cincinnati Insurance Co.
                                  50 S. Main Street, Ste. 615
                                  Akron, OH 44308

LAWRENCE J. SCANLON               FRANK G. MAZGAJ
JAMES R. GALLA                    FRANK G. MAZGAJ, JR.
57 S. Broadway St., 3rd Fl.       3737 Embassy Parkway, Ste. 100
Akron, OH 44308                   Akron, OH 44333

*Gwin, P.J.*

{¶1}    Appellants appeal the April 5, 2022 judgment entry of the Stark County Court of Common Pleas granting appellees' motion for summary judgment.

*Facts & Procedural History*

{¶2}    On June 25, 2020, appellants Angela Campagna-McGuffin, as legal guardian of Macy McGuffin, Dawn Bagnola, as legal guardian of Heaven Ward, and Shelly Benson, as legal guardian of Jocelynn Benson, filed a complaint against appellee Diva Gymnastics Academy, Inc., alleging negligence, negligent supervision, bodily injury with mental anguish, and loss of consortium.  Diva is owned and operated by Dr. Lisa Ford ("Ford").

{¶3}    Appellants McGuffin, Bagnola, and Benson filed their first amended complaint on September 23, 2020, adding appellee Travis Seefried, the head coach at Diva, as a defendant, and alleging the following claims:  negligence, negligent supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium.

{¶4}    Appellants, who brought these claims on behalf of their daughters, alleged that, between 2017 and 2019, their daughters were injured as a result of excessive conditioning they were made to do by Seefried and Diva. Specifically, appellants allege they had to do excessive frog jumps, excessive butt scoots, excessive v-ups, and hang on the bars for long periods of time.  They allege this extra conditioning amounted to a form of punishment, which breached appellees' duty to teach, train, and instruct according to United States of America Gymnastics ("USAG") rules, and the duty of ordinary care for

conducting gymnastics activities.   There are no allegations of any sexual misconduct against appellees.

{¶5}   On November 20, 2020, appellant Felisha Waltz, as legal guardian of Abeka Fouts, filed a complaint under a separate case number, alleging similar conduct and causes of action against appellees.   In the second case, appellant Waltz filed a second amended complaint, adding appellant Courtney Hawk, as legal guardian of Samantha Hawk, as a plaintiff in the case.

{¶6}   Appellees filed answers in each of the cases, denying the allegations against them, and arguing appellants filed their cases as a way to seek revenge on appellees.   Specifically, appellees argue that four of the five appellant gymnasts were asked to leave Diva due to inappropriate conduct, such as harassing other gymnasts and disobeying coaches.

{¶7}   Appellees filed a motion to consolidate the cases in February of 2021. Appellants did not oppose the motion.   Accordingly, the trial court consolidated the cases on February 19, 2021.

{¶8}   Appellees filed a motion for summary judgment on October 29, 2021. Appellants filed a memorandum in opposition on November 29, 2021. Appellees filed a reply brief on December 8, 2021.   In their reply brief, appellees moved the trial court to strike the affidavits filed with appellants' memorandum in opposition because the affidavits contradict the affiants' deposition testimony.

{¶9}   After appellees filed their motion for summary judgment, appellants filed a motion to file a third amended complaint in order to delete and/or dismiss certain counts of the complaint.   The trial court granted appellants' motion to file a third amended

complaint. The third amended complaint deleted/dismissed the following cases of actions: Count Four (intentional infliction of emotional distress), Count 5 (negligent infliction of emotional distress) and Count 7 (loss of consortium). Accordingly, the remaining claims against appellees were negligence, negligent supervision, and "bodily injury with mental anguish."

{¶10} The trial court issued a judgment entry on March 23, 2022, stating it was granting appellees' motion for summary judgment, and stating it would issue a final judgment entry with the court's findings and analysis. The trial court issued its final judgment entry on April 5, 2022. First, the trial court granted appellees' motion to strike the affidavits submitted by appellants in response to appellees' motion for summary judgment. The trial court provided, in detail, how and why each of the affidavits conflicted with the testimony each affiant gave during their deposition testimony. The trial court stated it would not consider the affidavits when ruling on the motion for summary judgment.

{¶11} Next, the trial court granted appellees' motion for summary judgment. The court found: (1) the deposition testimony of appellants contradicts their claims that they suffered physical injury, and appellants have provided no evidence that they suffered a physical injury as a result of appellees' conduct; (2) appellants' claims are barred by the Ohio Recreational Activity Doctrine because appellants accepted the risks inherent in the sport by engaging in competitive gymnastics; and (3) appellants acknowledged the inherent risk and expressly assumed the risk by signing "Release, Indemnification, and Hold Harmless Agreements."

{¶12} Appellants appeal the April 5, 2022 judgment entry of the Stark County Court of Common Pleas and assign the following as error:

{¶13} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BY FINIDNG THAT OHIO'S RECREATIONAL DOCTRINE BARS APPELLANTS' CLAIMS.

{¶14} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BY FINDING THAT THERE WAS NO EVIDENCE OF PHYSICAL INJURY CAUSED BY APPELLEE.

{¶15} "III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BY STRIKING THE APPELLANTS' AFFIDAVITS."

{¶16} For ease of discussion, we will discuss appellants' assignments of error out of sequence.

III.

{¶17} In their third assignment of error, appellants contend the trial court committed error in striking their affidavits. Appellants submitted affidavits of themselves (mothers) and their daughters in response to appellees' motion for summary judgment. The trial court struck the affidavits, finding they conflicted with the affiants' deposition testimony.

{¶18} Appellants first contend the trial court could not strike the affidavits because the proper procedure was not followed, as appellees never filed a motion to strike. However, in the reply brief dated December 8, 2021, appellees specifically state, "[t]he contradictions, discrepancies, and self-serving intent behind these Affidavits warrants the Affidavits of Macy McGuffin, Angela Campagna-McGuffin, Heaven Ward, Dawn Bagnola,

Jocelynn Benson, Shelly Benson, Abeka Fouts, Felisha Waltz, Samantha Hawk, and Courtney Hawk be stricken from the record."

{¶19} Appellants also contend that since the issue was raised in a reply brief, they did not have a "procedural mechanism" to respond. However, appellants did not attempt to strike the allegedly improper portion of the reply brief, nor did they seek leave to file a sur-reply. This Court has previously held that when an appellant does not attempt to strike the allegedly improper portion of the brief or seek leave to file a sur-reply, appellant waives any error. *Edwards v. Perry Twp. Board of Trustees*, 5th Dist. Stark No. 2015CA00107, 2016-Ohio-5125; *Carrico v. Bower Home Inspection, LLC*, 5th Dist. Knox No. 16CA21, 2017-Ohio-4057.

{¶20} Appellants also contend this Court should review the trial court's granting of the motion to strike under a de novo review because the striking of the affidavits took place within the summary judgment pleading process. However, this Court has consistently reviewed entries striking affidavits, including entries striking affidavits within the summary judgment pleading process, under an abuse of discretion standard. *Curtis v. Schmid,* 5th Dist. Delaware No. 07 CAE 11 0065, 2008-Ohio-5239; *Campbell v. WEA Belden,* LLC, 5th Dist. Stark No. 2006CA00206, 2007-Ohio-1581; see also *Pickens v. Kroger Co.*, 10th Dist. Franklin No. 14AP-215, 2014-Ohio-4825. Pursuant to our established precedent, we review the trial court's striking of the affidavits under an abuse of discretion standard. In order to find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶21} Affidavits that are inconsistent with earlier deposition testimony are subject to being stricken. "An affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47. Further, "[w]hen determining the effect of a party's affidavit that appears to be inconsistent with the party's deposition and that is submitted either in support of or in opposition to a motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the deposition." *Id.*

{¶22} The trial court provided a detailed description of how each of the affidavits contradicts the affiant's deposition testimony. Appellants contend the affidavits were merely condensed versions of each affiant's deposition testimony, and the affidavits did not contradict the deposition testimony. This Court has reviewed each of the depositions and affidavits at issue. We find the trial court did not abuse its discretion in determining the affidavits contradict the depositions, and concur with the trial court's analysis in striking each of the affidavits.

{¶23} In each of the affidavits of the appellant-daughters in this case, they averred they were forced to do excessive conditioning as a form of punishment, and that such conditioning hurt physically and emotionally, causing pain and injury. However, the testimony in each of their depositions is inconsistent with or contradictory to their deposition testimony.

{¶24} Macy McGuffin stated in her deposition that there was no part of the conditioning at Diva she didn't like, she did all the things she was asked to do, other than

being yelled at, she could not remember anything wrong or inappropriate before she fell off the bars during a meet, she did not have panic attacks, and she was not treated for physical injury. While she first mentioned a knee injury after doing frog jumps, she then stated she did not feel pain in her knee after the frog jumps, she did not know which knee hurt, and she could not remember if she told anyone about knee pain that subsequently developed. Heaven Ward testified that the physical injuries she sustained while at Diva were "just part of the sport," her trauma involved people blaming her for "stuff [she] didn't do, the extra conditioning "hurt [my] feelings" and made her upset because she thought she didn't deserve it; and nothing with the coaching at Diva resulted in her being physically hurt. Jocelynn Benson stated her injuries, like a sprained ankle and callouses were "just normal things that happened in gymnastics," her panic attacks and anxiety may have been caused by the general pressure put on her because expectations were really high and she was nervous she would not meet these expectations, and it was horrible for her at Diva because she could not handle the pressure put on her and didn't know what to do. The only other physical injury Benson testified to was asthma attacks, which was a pre-existing condition that she still has today. Abeka Fouts testified the injuries she suffered at Diva consisted of callouses on her hands after several years of gymnastics, and an injury she sustained when she fell off the balance beam when another gymnast threw a dodgeball at her, and that she had a counselor for other issues, but never talked or discussed anything about Diva with the counselor. During Samantha Hawk's deposition testimony, there was no testimony that she received any injury from doing pull-ups or frog jumps. Rather, she stated she sprained an ankle at practice and hurt her toe on the bar, neither of which involved the coaches.

**{¶25}** Similarly, each of the appellant-mothers' affidavits alleged they had personal knowledge that the excessive conditioning caused pain and injury to their daughter. However, their deposition testimony is inconsistent with or contradicts these averments.

**{¶26}** Courtney Hawk stated she never observed any conditioning used as punishment, and her daughter never received treatment for any injuries sustained at Diva. Felisha Waltz testified her daughter was "mentally tortured." When asked about physical injuries, Waltz stated she believed excessive exercises could be torture, but that she never observed any of the excessive exercises. Waltz testified that, in the time she spent in the gym, she never observed anything improper regarding her daughter by the coaches, and the issue her daughter has that was caused by the coaches at Diva is that her daughter "struggled with trusting adults." Shelly Benson testified her daughter had anxiety prior to enrolling at Diva, and she never had any hesitation leaving her daughter at Diva, even though she saw other girls there crying. Benson stated she never observed any inappropriate disciplining of her daughter by the coaches at Diva. The only physical injury Benson noted was when her daughter sprained her ankle during a vault. Dawn Bagnola, who attended practice regularly, testified she had no complaints while she was there about the way the coaches were treating her daughter, she never observed the coaches treat her daughter badly while she was there, and other than her ankle and knee injury (incurred on a landing off the balance beam), her daughter did not injure any other part of her body while at Diva. When asked what conduct of Seefried constituted "torture," Bagnola stated, "it was just a mental game with him." Angela Campagna-McGuffin testified she did not witness any of the incidents of extra conditioning, and the physical

injuries Macy sustained consisted of an injury to her wrist and a sore back after she fell at a meet.

{**¶27**}  We find the trial court did not abuse its discretion in striking the affidavits of appellant-mothers and appellant-daughters; and in finding appellants could not rely on these affidavits to create a genuine issue of material fact.  Appellants' third assignment of error is overruled.

*Summary Judgment Standard*

{**¶28**}  Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶29}  A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts.  *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981).  The court may not resolve any ambiguities in the evidence presented.  *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984).  A fact is material if it affects the outcome of the case under the applicable substantive law.  *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶30}  When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court.  *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).  This means we review the matter de novo.  *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

I.

{¶31}  In their first assignment of error, appellants contend the trial court committed error in determining the express and implied assumption of risk doctrines applied to bar appellants' claims.

{¶32}  Three standards are used to permit recovery for injuries received during sports and recreation activities: (1) intentional tort; (2) willful or reckless misconduct, and (3) negligence.  *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990).  In this case, appellants do not allege an intentional tort or willful or reckless misconduct.

{¶33}  In order to establish a cause of action for negligence, a plaintiff must demonstrate: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant

breached that duty; (3) and the plaintiff suffered injury proximately caused by the defendant's breach of duty. *Mussivand v. David*, 45 Ohio St.3d 314, 544 N.E.2d 265 (1989). However, when a defendant shows the plaintiff assumed the risk of injury through participating in an inherently dangerous activity, the duty of care is eliminated. *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 1996-Ohio-320, 659 N.E.2d 1232 (1996).

{¶34} It is well-settled that Ohio law recognizes three separate types of the defense of assumption of the risk: express, primary, and implied. *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116 (2004). Each of these types of assumption of risk provides an independent defense to a negligence claim. *Id.*

*Primary Assumption of the Risk*

{¶35} Primary assumption of the risk is a defense of extraordinary strength because it essentially means "that no duty was owed by the defendant to protect the plaintiff from that specific risk," so a "court must proceed with caution when contemplating whether primary assumption of the risk completely bars a plaintiff's recovery." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 1996-Ohio-320, 659 N.E.2d 1232 (1996). A successful primary assumption of the risk defense means that the duty element of negligence is not established as a matter of law. *Id.* Thus, the defense prevents the plaintiff from making a prima facie case of negligence. *Id.* The applicability of the primary-assumption-of-the-risk defense presents an issue of law for the court to decide. *Id.*

{¶36} "When individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown

that the other participant's actions were either reckless or intentional." *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990).

**{¶37}** The primary assumption of risk doctrine defense relieves a recreation provider from any duty to eliminate the risks that are inherent in the activity, because such risks cannot be eliminated. *Simmons v. Quarry Golf Club*, 5th Dist. Stark Nos. 2015CA00143, 2015CA00148, 2016-Ohio-525. "The types of risks associated with [an] activity are those that are foreseeable and customary risks of the * * * recreational activity." *Pope v. Willey*, 12th Dist. Clermont No. CA2004-10-077, 2005-Ohio-4744.

**{¶38}** The test for applying the doctrine of primary assumption of the risk to recreational activities and sporting events requires: (1) the danger is ordinary to the game; (2) it is common knowledge the danger exists; and (3) the injury occurs as a result of the danger during the course of the game. *Simmons v. Quarry Golf Club*, 5th Dist. Stark Nos. 2015CA00143, 2015CA00148, 2016-Ohio-525. "The nature of the sporting activity is highly relevant in defining the duty of care owed by a particular defendant: what constitutes an unreasonable risk, under the circumstances, of a sporting event must be delineated with reference to the way the particular game is played, i.e., the rules and customs that shape the participant's idea of foreseeable conduct in the course of the game." *Harting v. Dayton Dragons Professional Baseball Club, LLC*, 171 Ohio App.3d 319, 2007-Ohio-2100, 870 N.E.2d 766 (2nd Dist. Montgomery), quoting *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990).

**{¶39}** Appellants contend the trial court committed error in applying the primary assumption of the risk doctrine to bar their claims in this case because the activities they cited in their depositions (100 butt scoots, frog jumps, hanging on the bars, excessive

conditioning) is not ordinary and inherent to the sport. Appellants cite this Court's case of *Simmons v. Quarry Golf Club* in support of their argument. 5th Dist. Stark Nos. 2015CA00143, 2015CA00148, 2016-Ohio-525. In *Simmons*, we held that falling into a large, uncovered drain hole is not one of the foreseeable or inherent risks of the game of golf, nor is it a danger ordinary to or which commonly exists in the game of golf. We noted that while a golfer could foresee a rabbit hole may be on the golf course, a golfer could not foresee an uncovered drain. *Id.*

**{¶40}** However, in this case, unlike in *Simmons*, the exercises, drills, and conditioning alleged by appellants were normal, routine, and customary during high-level competitive gymnastics training. Seefried and Ford described conditioning that is essential to gymnastics, specifically frog jumps and butt scoots, for core, upper body, and leg strength. Samantha Hawk testified the Level 6 and higher gymnasts regularly did three sets of 25 pull-ups as part of conditioning. Courtney Hawk stated her daughter had "rips" on her hands when she first started competitive gymnastics. Jocelynn Benson testified that, at her current gym that she likes, they spend thirty to forty minutes each gymnastics training session conditioning, including doing leg workouts, squats, lunges, push-ups, plank holds, v-ups, running suicides, and running endurance routines. Macy McGuffin testified they sometimes did frog jumps as part of their daily conditioning, usually two sets of 25, and she had no trouble doing 100 of them. Brandi Vetrone stated that she observed the gymnasts doing butt scoots most days during conditioning. The gymnasts described their physical injuries such as callouses, "rips" in hands, ankle injuries, muscle soreness, and knee pain, as being "part of the sport." A reasonable participant in high-level competitive gymnastics would expect to encounter these risks or hazards.

{¶41} Appellants argue that, because the excessive conditioning is a violation of the Safe Sport Policy of the USAG, the assumption of the risk doctrine does not apply. Appellants cite the affidavit of their expert Michael Jacki ("Jacki"), which states that appellees "engaged in numerous violations of the USAG Safe Sport Policy resulting in abusive behavior towards gymnasts" and the "conduct is not inherent in gymnastic activities."

{¶42} We first note that not every violation of a sport's rules meets the negligence standard, and the focus for what constitutes an unreasonable risk of harm under the circumstances involves the examination of both the "rules *and* customs" associated with the sport that shape the participants' ideas of foreseeable conduct. *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990) (emphasis added); see also *Kumar v. Sevastos*, 8th Dist. Cuyahoga No. 109795, 2021-Ohio-1885 ("violation of safety rule, by itself, is an insufficient basis by which to attach liability"); *Brown v. Harris,* 2nd Dist. Montgomery No. 27069, 2017-Ohio-2607 ("it is clear that some actions which are outside of the rules or customs of the sport do not create an unreasonable risk of harm"); *Kalan v. Fox*, 187 Ohio App.3d 687, 2010-Ohio-2951, 933 N.E.2d 337 (11th Dist. Geauga) ("even if physical conduct violates a rule of sport, and could potentially subject the violator to internal sanctions prescribed by the sport itself * * * rule infractions, deliberate or unintentional, are almost inevitable * * *).

{¶43} Further, Felisha Waltz, Dawn Bagnola, and Angela Campagna-McGuffin testified they reported Diva and Seefried to USAG. On June 30, 2020, USAG sent a letter to Seefried stating they "received a report alleging violations of USA Gymnastics Safe Sport policy regarding verbal/emotional misconduct and bullying behaviors." (Deposition

of Seefried, Exhibit 1 to Affidavit of Donald McPherson). In the letter, USAG stated it was ending the informal inquiry, not filing a formal complaint on the safe sport matter, and was administratively closing the matter.

{¶44} The fact that appellants submitted an expert affidavit opining that appellees engaged in violations of the Safe Sport Policy and that their conduct is "not inherent" in gymnastics activities does not create a genuine issue of material fact in this case. Jacki states in the affidavit attached to his report that he reviewed and relied upon, for the opinions stated in the affidavit, "the affidavits of the plaintiffs, and their mothers," and the depositions of Ford, Seefried, Jose Alvarez, Brian Strickmaker, and Brandi Vetrone. Jacki did not review the depositions of either the appellant-mothers or the appellant-daughters in order to form the opinions in the affidavit. He did review the affidavits of appellants; however, as detailed above, these affidavits were inconsistent and/or conflicted with the depositions of appellants, specifically with regards to the types of injuries suffered and as to what the appellant-mothers actually witnessed. "It is well-established that a court may disregard conclusory allegations in an affidavit unsupported by factual material in the record." *H&H Properties v. Hodkinson*, 10th Dist. Franklin No. 10AP-117, 2010-Ohio-5439.

{¶45} We find the trial court did not commit error by holding the primary assumption of the risk doctrine applies to bar appellants' negligence claims against appellees.

*Express Assumption of the Risk*

{¶46} Appellants argue the trial court committed error in applying the express assumption of the risk doctrine to bar their claims because the release the parents signed

only covers "inherent" risks, and the risks in this case are not inherent to gymnastics; further, that the release failed to identify the precise activity which resulted in injury.

{¶47} Each appellant-mother signed a document entitled "Release, Indemnification, and Hold Harmless Agreement" ("Release") prior to any of the incidents alleged in the complaint. Each appellant-mother in this case admitted in their deposition to signing the Release when registering their appellant-daughter for gymnastics at Diva. Angela Campagna-McGuffin signed the release on June 7, 2016, Dawn Bagnola signed the Release on June 3, 2017, Shelly Benson signed the Release on April 27, 2017, Felisha Waltz signed the Release on June 2, 2017, and Courtney Hawk signed the Release on July 13, 2019.

{¶48} The Release states as follows:

* * * I hereby agree to release and discharge from liability arising from negligence DIVA GYMNASTICS ACADEMY, INC. and its owners, directors, officers, employees, agents, volunteers, participants, and all other persons or entities acting for them (hereinafter collectively referred to as "Releasees") on behalf of myself and my children * * *, and also agree as follows:

1. I acknowledge that GYMNASTICS involves known and unanticipated risks which could result in physical or emotional injury * * * risks include, but are not limited to, gymnastics, tumbling, cheering, high bars, low bars, beam training activities, exhibitions, demos and open gym, resulting in injuries and other medical conditions from physical activity; and damaged clothing or other property. I understand such risks simply cannot be eliminated, despite

the use of safety equipment, without jeopardizing the essential qualities of the activity.

2. I expressly accept and assume all of the risks inherent in this activity or that might have been caused by the negligence of the Releasees. My participation in this activity is purely voluntary and I elect to participate despite the risks. In addition, if at any time I believe that event conditions are unsafe or that I am unable to participate due to physical or mental conditions, then I will immediately discontinue participation.

3. I hereby voluntarily release, forever discharge, and agree to indemnify and hold harmless Releasees from any and all claims, demands, or causes of action which are in any way connected with my participation in this activity, or my use of their equipment or facilities, arising from negligence. This release does not apply to claims arising from intentional conduct. * * *

**By signing this document, I agree that if I am hurt or my property is damaged during my participation in this activity, then I may be found by a court of law to have waived my rights to maintain a lawsuit against the parties being released on the basis of any claim for negligence.**

I have had sufficient time to read this entire document and, should I choose to do so, consult with legal counsel prior to signing. Also, I understand that this activity might not be made available to me or that the cost to engage in this activity would be significantly greater if I were to choose not to sign this release, and agree that the opportunity to participate at the stated cost in

return for the execution of this release is a reasonable bargain. I have read and understood this document and I agree to be bound by its terms.

**PARENT OR GUARDIAN ADDITIONAL AGREEMENT**

In consideration of [minor's name] being permitted to participate in this activity, I further agree to indemnify and hold harmless Releasees from any claims alleging negligence which are brought or on behalf of minor or are in any way connected with such participation by [minor].

{¶49} Express assumption of the risk is a separate and independent bar to recovery from the doctrine of primary assumption of the risk. *Hague v. Summit Acres Skilled Nursing & Rehabilitation*, 7th Dist. Noble No. 09 NO 364, 2010-Ohio-6404.

{¶50} Valid exculpatory clauses or releases constitute express assumption of risk, and is the same as waiving the right to recover. *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 451 N.E.2d 780 (1983). A participant in a recreational activity is free to contract with the proprietor of such activity to relieve the proprietor of responsibility for damages or injuries to the participant caused by negligence, except when it is caused by wanton or willful misconduct. *Lamb v. University Hospitals Health Care Enterprises, Inc.*, 8th Dist. Cuyahoga No. 73144, 1998 WL 474183. Appellants do not allege wanton or willful misconduct in this case. Parents have the authority to bind their minor children to exculpatory agreements in favor of sponsors of sports activities where the cause of action sounds in negligence. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 1998-Ohio-389, 696 N.E.2d 210 (1998).

{¶51} For express assumption of the risk to operate as a bar to recovery, the party waiving his or her right to recover must make a conscious choice to accept the

consequences of the other party's negligence. *Lamb v. University Hospitals Health Care Enterprises, Inc.*, 8th Dist. Cuyahoga No. 73144, 1998 WL 474183. The waiver must be clear and unequivocal. *Id.* Releases from liability are narrowly construed; however, courts routinely apply such releases to bar future tort liability as long as the intent of the parties, with regard to exactly what kind of liability and what persons and/or entities are being released, is stated in clear and unambiguous terms. *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 505 N.E.2d 264 (1987); *Hague v. Summit Acres Skilled Nursing & Rehabilitation*, 7th Dist. Noble No. 09 NO 364, 2010-Ohio-6404.

{¶52} In this case, the Release clearly specified the kind of liability released, as the Release contains the word "negligence" multiple times. It also clearly specifies the persons and/or entities being released (Diva, its owners, directors, officers, employees, agents, volunteers, participants, and all other persons or entities acting for them). The language contained in the Release is sufficiently clear and unambiguous such that the express assumption of the risk defense bars recovery. See *Geczi v. Lifetime Fitness*, 10th Dist. Franklin No. 11AP-950, 2012-Ohio-2948 (use of word "negligence" and parties being released sufficient for express assumption of risk); *Goss v. USA Cycling*, 8th Dist. Cuyahoga No. 111084, 2022-Ohio-2500 (use of words "release" and "negligence" sufficient for express assumption of risk); *Grange Mut. Cas. Co. v. Buckeye Lake Marina, Inc.*, 5th Dist. Fairfield No. 2011-CA-00027, 2011-Ohio-6465.

{¶53} Appellants contend since the word "conditioning" does not appear in the Release, their claims are not barred. However, appellants expressly assumed the risk for "gymnastics, tumbling, cheering, high bars, low bars, beam training, activities, exhibitions, demos and open gym." Further, the language in the Release states that "risks

include, but are not limited to," the list above.  In the second paragraph of the Release, appellants expressly "assume[d] all of the risk inherent in this activity."  By signing the Release, appellants acknowledged gymnastics involves "known and unanticipated risks which could result in physical or emotional injury."

{¶54} Appellants additionally argue they did not expressly assume liability because the risks suffered by appellants during "excessive conditioning" are not inherent risks within the sport of gymnastics.  As noted above, the Release specifically includes "known and unanticipated risks," including risks that "could result in physical or emotional injury."  Further, as detailed above, the exercises, drills, and conditioning alleged by appellants were normal, routine, and customary during high-level competitive gymnastics training.

{¶55} We find the language contained in the Release is sufficiently clear and unambiguous.  Appellants expressly assumed the risks they describe in their depositions.  Accordingly, the express assumption of the risk defense is a separate and independent bar to recovery in this case.

{¶56} Appellants' first assignment of error is overruled.

II.

{¶57} In their second assignment of error, appellants contend the trial court committed error in granting summary judgment by finding there was no evidence of physical injury caused by appellees.  Appellants argue the trial court improperly focused only on the lack of medical treatment in its analysis and that, even if appellants received no medical treatment for their injuries, they could still produce evidence of physical injury.

{¶58} As an alternative and independent basis for granting summary judgment, the trial court found appellants could not meet the third part of the negligence test, i.e., that appellants suffered injury proximately caused by appellees' breach of duty. Appellants claim the trial court based its decision solely on the lack of medical treatment. However, the trial court did not base its decision solely on the lack of medical treatment of appellants; rather, the trial court based its decision on lack of injury proximately caused by appellees. The trial court specifically stated, "the deposition testimony of appellants contradicts their claims that they suffered physical injury, and appellants have provided no evidence that they suffered a physical injury as a result of appellees' conduct."

{¶59} Appellants argue a plaintiff can recover damages for emotional distress and mental anguish associated with a contemporaneous physical injury. However, the cases cited by appellants in support of this argument are cases where the claim at issue was negligent infliction of emotional distress, not ordinary negligence. *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983) ("a cause of action may be stated for negligent infliction of serious emotional distress without the manifestation of a resulting physical injury" if the emotional injuries are severe, debilitating, and reasonably foreseeable); *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 1995-Ohio-65, 652 N.E.2d 664 (Ohio does not recognize a claim for negligent infliction of emotional distress where the distress is caused by the plaintiff's fear of a non-existent physical peril); *Loudin v. Radiology & Imaging Services, Inc.*, 128 Ohio St.3d 555, 2011-Ohio-1817 (courts have allowed recovery for emotional distress accompanied by injury); see also *C.R. Withem Enterprises v. Maley*, 5th Dist. Fairfield No. 01 CA 54, 2002-Ohio-5056 (affirming trial court's determination that

compensatory damages for mental anguish must accompany a physical injury and must stem from a negligent act).

{¶60} In a negligent infliction of emotional distress claim, a plaintiff can recover for negligently inflicted emotional and psychiatric injuries accompanied by contemporaneous physical injury, and may include damages for mental anguish, emotional distress, anxiety, grief, or loss. *Binns v. Fredendall*, 32 Ohio St.3d 244, 513 N.E.2d 278 (1987). Negligent infliction of emotional distress is a separate and distinct cause of action, requiring different elements than an ordinary negligence claim. In their third amended complaint, appellants deleted/dismissed their claims of intentional and negligent infliction of emotional distress. During their depositions, the harm described by appellants included struggling to trust adults, general pressure, nervousness from high expectations, being pushed past their limit, anxiety, treating them with disrespect, being "too much," and crying. Appellant-daughters did not identify any physical injury that was proximately caused by appellees' conduct. Rather, the physical injuries they described were legitimate sporting injuries inherent to high-level gymnastics training, and were not caused by appellees' conduct. Appellant-mothers did not witness any physical injuries proximately caused by appellees' conduct.

{¶61} Appellants contend Jacki's affidavit is sufficient to create a genuine issue of material fact as to physical injury caused by appellees' conduct because Jacki opines that, "as a direct and proximate result of this failure by the Defendants to comply and oversee, the Plaintiffs * * * were subjected to unreasonable and unnecessary over-conditioning that would cause girls their age physical discomfort as well as unnecessary injury and emotional distress." However, as detailed above, Jacki did not review the

depositions of appellants in rendering his opinion.  He only reviewed appellants' affidavits, which contained contradictory information about the injuries appellants' claimed in their affidavits.

{¶62}  We find the trial court did not commit error in determining appellants could not meet the third part of the negligence test, i.e., that appellants suffered injury proximately caused by appellees' breach of duty.  Appellants' second assignment of error is overruled.

{¶63}  Based on the foregoing, appellants' assignments of error are overruled.

{¶64}  The April 5, 2022 judgment entry of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur