[Cite as *Weihe v. JP Morgan Chase Natl. Assn.*, 2025-Ohio-3308.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CATHERINE WIEHE, ET AL. | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiffs-Appellants | : | Hon. Andrew J. King, J. |
| | : | Hon. Robert G. Montgomery, J. |
| -vs- | : | |
| | : | |
| JP MORGAN CHASE BANK | : | Case No. 25CA16 |
| NATIONAL ASSOCIATION, ET AL. | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 23 CV 0257


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            September 12, 2025


APPEARANCES:

For Plaintiffs-Appellants                For Defendants-Appellees

MICHAEL L. INSCORE                       SARAH M. BENOIT
3 North Main Street                      41 South High Street
Suite 703                                Suite 1800
Mansfield, OH  44902-1741                Columbus, OH  43215-6106

                                         DAVID N. HARING
                                         99 Park Avenue West
                                         Suite B
                                         Mansfield, OH  44902

*King, J.*

{¶ 1}   Plaintiffs-Appellants, Catherine Wiehe, Joan Cowdery, and Michael Gesing, appeal the February 19, 2025 judgment entries of the Court of Common Pleas of Richland County, Ohio, denying their motion to strike and granting summary judgment to Defendants-Appellees, JPMorgan Chase Bank, N.A., Barbara Walker-Cox, and Ronald Cox.  We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   Joan Bunsey and appellee Barbara Walker-Cox were sisters and the aunts of appellants.  Two additional sisters who predeceased Bunsey were the mothers of appellants.  Walker-Cox is married to Ronald Cox and they reside in Las Vegas, Nevada.

{¶ 3}   Bunsey never married and had no children.  She lived in New York City.  In 2019, at the approximate age of 83, her health started to decline rapidly.  Her nieces, Wiehe and Cowdery, traveled to New York to help care for her.  In 2021, Bunsey moved into an assisted living facility in Mansfield, Ohio.  Appellants provided care to Bunsey, visiting her, running errands for her, and transporting her to appointments.

{¶ 4}   At some point, Wiehe asked Walker-Cox to help Bunsey with her finances, specifically, opening a bank account in Ohio.  On March 4, 2022, Cowdery took Bunsey to the local Chase Bank to open checking and savings accounts.  They met with bank manager Adam Siringer.  Bunsey indicated she wanted to open accounts and transfer her New York funds into the accounts and have her retirement income directly deposited therein.  She expressed the desire to have Walker-Cox on the accounts.  Cowdery helped Bunsey operate the computer mouse to point and click on the digital forms.  Walker-Cox

was listed as a "customer to be added later."  Bunsey elected to receive electronic copies of the documents.

{¶ 5}   On March 10, 2022, Walker-Cox went to a Chase Bank in Las Vegas to add herself to the accounts as instructed by Bunsey.  By June 2022, over $1 million was added to the accounts.

{¶ 6}   On August 18, 2022, Bunsey and Walker-Cox went to the local Chase Bank in Ohio to add beneficiaries to the account.  They met with Danielle Horvath.  Appellants were added to the accounts as payable on death ("POD") beneficiaries.

{¶ 7}   Bunsey passed away on May 3, 2023, at the age of 86.  On May 11, 2023, Walker-Cox met with Siringer at Chase Bank.  She removed Bunsey from the account and added her husband as a joint owner.

{¶ 8}   On May 24, 2023, appellants filed a complaint against appellees alleging conversion, interference with contract, and breach of contract.  Appellants also sought declaratory judgment.  Appellants filed an amended complaint on August 15, 2023, and a second amended complaint on November 20, 2023, adding a claim for reformation/rescission.  Appellants alleged they were the rightful owners of the monies in the accounts.

{¶ 9}   On October 7, and 9, 2024, appellees filed separate motions for summary judgment.  Both motions had attached exhibits and affidavits.  On November 1, 2024, appellants filed a motion to strike portions of the affidavits of Walker-Cox and Siringer, arguing some of the averments lacked foundation, conflicted with deposition testimony, and were speculative.  Walker-Cox filed a reply with a supplemental affidavit on

November 18, 2024.  By judgment entries filed February 19, 2025, the trial court denied the motion to strike and granted the motions for summary judgment.

{¶ 10} Appellants filed an appeal with the following assignments of error:

I

{¶ 11} "THE TRIAL COURT ERRED IN WEIGHING THE EVIDENCE AND MAKING FACTUAL FINDINGS THAT THE DECEDENT, JOAN BUNSEY, ACKNOWLEDGED RECEIPT OF THE DEPOSIT ACCOUNT AGREEMENT ON MARCH 4, 2022, INTENTIONALLY ADDED BARBARA WALKER-COX AS A JOINT OWNER WITH RIGHTS OF SURVIVORSHIP, AND ELECTRONICALLY SIGNED A NEW SIGNATURE CARD ON AUGUST 18, 2022."

II

{¶ 12} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE MOTIONS FOR SUMMARY JUDGMENT OF DEFENDANT JPMORGAN CHASE BANK, N.A., AND DEFENDANTS BARBARA WALKER-COX AND RONALD COX."

III

{¶ 13} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING PLAINTIFFS' MOTION TO STRIKE IN PART AFFIDAVIT AVERMENTS OF BARBARA WALKER-COX AND ADAM SIRINGER."

{¶ 14} For ease of discussion, we will address the last assignment of error first.

III

{¶ 15} In their third assignment of error, appellants claim the trial court erred in overruling their motion to strike parts of the affidavits of Walker-Cox and Siringer.  We disagree.

{¶ 16} This court has consistently reviewed decisions on motions to strike affidavits within the context of summary judgment proceedings under an abuse of discretion standard. *Lakeview Loan Servicing, LLC v. Adegunju*, 2025-Ohio-2019, ¶ 19 (5th Dist.); *Campagna-McGuffin v. Diva Gymnastics Academy, Inc.*, 2022-Ohio-3885, ¶ 20 (5th Dist.); *Curtis v. Schmid*, 2008-Ohio-5239, ¶ 17 (5th Dist.). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 17} Under Civ.R. 56(E), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." "If an affidavit of a movant for summary judgment is inconsistent with the movant's former deposition testimony, summary judgment may not be granted in the movant's favor." *Byrd v. Smith*, 2006-Ohio-3455, ¶ 26, citing *Turner v. Turner,* 67 Ohio St.3d 337 (1993).

{¶ 18} In their motion to strike, appellants argued portions of the affidavits of Walker-Cox and Siringer lacked foundation as to Bunsey's state of mind, conflicted with

their deposition testimony, and contained speculative statements; therefore, the affidavits amounted to sham affidavits.

{¶ 19} The trial court conducted a detailed analysis and denied the motion. Judgment Entry filed February 9, 2025. We do not find the trial court abused its discretion in its decision.

*Walker-Cox Affidavit*

{¶ 20} Appellants argue Walker-Cox's affidavit was more specific than her deposition testimony. Appellants point out in her deposition, Walker-Cox testified Bunsey wanted her "on the account with her" without elaboration. But in her affidavit, Walker-Cox averred Bunsey wanted her on the account as a joint owner with rights of survivorship and it was their mutual "understanding and agreement that whoever passed away first, the survivor would take full ownership of the accounts." Appellants' Brief at 28. Appellants argue because Walker-Cox failed to explain why her testimony changed, her averments should have been stricken. *Id.*

{¶ 21} The trial court found Walker-Cox's deposition testimony was not inconsistent with her affidavit. Judgment Entry filed February 9, 2025. The trial court found when Walker-Cox was asked if she could recall any conversation with Bunsey about the type of account she had opened, Walker-Cox testified Bunsey wanted a "joint ownership account." Walker-Cox depo. at 23. Walker-Cox then confirmed that she recalled Bunsey specifically using those words, "joint ownership account." *Id.* The trial court noted it did not consider this testimony for the truth of the matter asserted.

{¶ 22} On the issue of the mutual understanding as to the surviving sister taking full ownership of the accounts, the trial court found Walker-Cox's statement "is her

opinion, that is rationally based on her perception of her interactions" with Bunsey and Chase Bank which is permitted under Evid.R. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue").

{¶ 23} In reviewing both Walker-Cox's affidavit and deposition testimony, we cannot say the trial court abused its discretion in not finding an inconsistency.

*Siringer Affidavit*

{¶ 24} Appellants argue Siringer's affidavit goes well beyond his deposition. They argue in his affidavit, Siringer averred he was never told Bunsey wanted Walker-Cox to be a cosigner with no ownership rights and she did not want Walker-Cox to receive the monies in the accounts upon her death; none of this was mentioned in his deposition wherein he repeatedly stated he did not recall specific conversations. Appellants' Brief at 28. Appellants also argue Siringer averred he turned his computer screen toward Bunsey and explained the process to her, contrary to his deposition testimony of no recollection. *Id.*

{¶ 25} Chase Bank argues Siringer's affidavit provided "supporting detail and clarification to his prior deposition testimony" and explains the account-opening process, Siringer's routine practice in opening accounts, and his interaction with Bunsey. Chase Bank's Brief at 29. Chase Bank argues during Siringer's deposition, appellants' counsel did not pursue much of the supplemental information contained in his affidavit. *Id.*

{¶ 26} The trial court reviewed Siringer's affidavit and deposition "in their entirety" and found the affidavit "merely supplements his earlier sworn testimony." In reviewing both Siringer's affidavit and deposition testimony, we cannot say the trial court abused its discretion in so finding.

{¶ 27} Upon review, we find the trial court did not abuse its discretion in denying appellants' motion to strike.

{¶ 28} Assignment of Error III is denied.

## I, II

{¶ 29} In their first and second assignments of error, appellants claim the trial court erred in granting summary judgment to appellees. We disagree.

{¶ 30} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Regarding summary judgment, the Supreme Court stated the following in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448 (1996):

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379,

citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

{¶ 31} In *Leech v. Schumaker,* 2015-Ohio-4444, ¶ 13 (5th Dist.), this court explained the following:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the

nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 32} As an appellate court reviewing summary judgment motions, we stand in place of the trial court and review the issues de novo, under the same standards and evidence as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶ 33} In their second amended complaint, appellants alleged claims for conversion, interference with contract, and breach of contract, and sought declaratory judgment and reformation/rescission. In a lengthy analysis, the trial court found Bunsey and Walker-Cox were joint owners with rights of survivorship on the accounts, and found no genuine issues of material facts to exist. We agree with the trial court's determination.

{¶ 34} Appellants argue the trial court erred in finding Bunsey acknowledged receipt of the Deposit Account Agreement signed on March 4, 2022, intentionally added Walker-Cox as a joint owner with rights of survivorship, and electronically signed a new signature card on August 18, 2022, to add payable on death beneficiaries. Appellants argue genuine issues of material fact exist as to whether Bunsey wanted to add Walker-Cox as merely a signer on the accounts and not as an owner, let alone a joint owner with rights of survivorship.

{¶ 35} On March 4, 2022, decedent Bunsey, accompanied by appellant Cowdery, met with bank manager Siringer at Chase Bank to open a checking and savings account. Siringer testified Bunsey wanted her sister, appellee Walker-Cox, who lived in Las Vegas, to be added to the accounts. Siringer depo. at 18. Prior to coming in for the appointment, Bunsey spoke to Siringer over the telephone and indicated she wanted to add her sister to the accounts. *Id.* at 9-10, 12, 52-53. Siringer described Bunsey as "sharp," "direct," "organized," and "savvy." *Id.* at 8, 9, 15, 54. Bunsey wanted to get online to create a user ID and password so she could pay bills online. *Id.* at 15-16. Siringer opened the accounts with "customer to be added later," naming Walker-Cox as that customer. *Id.* at 18. Bunsey "signed" the signature card with "click to sign," whereby the customer uses the computer mouse to click and her name under "electronic signature" "pops up." *Id.* at 27; Plaintiff's Exhibit 4. Siringer explained during the click and sign process, Bunsey first had to decide whether to receive electronic or paper documents (she chose electronic). *Id.* at 28, 34; Plaintiff's Exhibit 8. Then several pages would appear going through her personal information, the deposit account agreements, banking services, fees, debit card coverage, and then the signature card. *Id.* at 28-29. Siringer recalled Bunsey being "good with the computer" and never indicating she did not understand what he was saying or what was going on. *Id.* at 31, 54. Siringer explained "all our joint accounts are rights with survivorship." *Id.* at 39. Siringer did not recall having a specific conversation with Bunsey about joint accounts, but normal procedure would be to explain that joint accounts would have rights of survivorship and that means "if something happens to you, it's her account; something happens to her, you know, it's still obviously your account, is how I explained it every time." *Id.* at 53. In his affidavit, Siringer averred Bunsey never indicated that "she

only wanted her sister to be added as a cosigner to the accounts, with no ownership rights. Additionally, Ms. Bunsey never told me that she did not want the funds in the accounts to go to her sister upon her death." *See* Siringer Affidavit, attached to Chase Bank's October 7, 2024 Motion for Summary Judgment as Exhibit F. Siringer stated he routinely explains to every customer opening a joint account the details of what a joint account is, namely, "if one joint account holder passes away, the account funds are then owned solely by the surviving joint account holder." *Id.*

{¶ 36} Appellant Cowdery testified she accompanied Bunsey to Chase Bank on March 4, 2022. Cowdery depo. at 34. Cowdery's understanding was that Bunsey was going to consolidate her assets in one place and add Walker-Cox as a co-signer so she could sign checks. *Id.* at 35. Cowdery recalled Siringer and Bunsey discussing putting Walker-Cox on the accounts so "in the event of an emergency, [she] could write checks to pay any bills." *Id.* at 43. Cowdery did not recall any discussions on joint account owner or what would happen to the funds in the event of Bunsey's death. *Id.* at 44-45, 60, 76. Cowdery had to help steady Bunsey's hand on the mouse to click the boxes on the electronic form. *Id.* at 45-46. Bunsey or Cowdery never asked for any paper copies of the forms. *Id.* at 47. Cowdery never had a reason to believe Bunsey was mentally impaired; she was confident that Bunsey understood what she was doing. *Id.* at 23, 47, 54, 71-72. Cowdery agreed by signing the Deposit Account Agreement with her electronic signature, Bunsey agreed to be bound by the terms of the agreement. *Id.* at 79. In her affidavit filed November 1, 2024, Cowdery averred there was no discussion about the options of accounts Bunsey could open.

{¶ 37} Appellee Walker-Cox testified Bunsey called her and told her to go to a Chase Bank in Las Vegas to be placed on her bank accounts. Walker-Cox depo. at 17, 21. Walker-Cox did not recall the actual words, but stated Bunsey "wanted a joint ownership account." *Id.* at 17, 23. Walker-Cox recalled Bunsey using those words. *Id.* at 23. Walker-Cox believed Bunsey wanted her on the accounts as a joint owner for the same reason Bunsey was on her accounts after she became a widow: "We were sisters. I was the closest thing to her." *Id.* at 99. Bunsey and Walker-Cox discussed if Bunsey died first, the funds would belong to Walker-Cox. *Id.* at 101. Bunsey told Walker-Cox she did not want appellants on the accounts as joint account holders. *Id.* at 101. Walker-Cox went to a Las Vegas branch and met with bank employee Lindi (Behnke) Foldvary to execute the electronic forms to be added to the accounts. *Id.* at 31, 33. Walker-Cox was told if Bunsey died first, she would have to bring the death certificate to the bank and Bunsey's name would be removed and the accounts would belong to her. *Id.* at 34, 102. She believed the accounts were as much hers as they were Bunsey's. *Id.* at 47. Together, Bunsey and Walker-Cox chose and added POD beneficiaries (appellants herein) to the accounts during an August bank appointment in Ohio. *Id.* at 45-47, 104. Walker-Cox understood the beneficiaries would come into play if both she and Bunsey were deceased. *Id.* at 50-51, 106. During the bank meeting to add the POD beneficiaries, they were told if Bunsey died first, her name would be removed from the account and the funds would belong to Walker-Cox; Bunsey did not question or object to that information. *Id.* at 105. Walker-Cox agreed Bunsey was not mentally impaired in any way and was very sharp. *Id.* at 79.

{¶ 38} Chase Bank employee Foldvary testified she was aware that at Chase Bank, joint accounts were all rights of survivorship accounts; there were no such things as courtesy signer accounts or joint accounts without rights of survivorship. Foldvary depo. at 13-14.

{¶ 39} Appellant Gesing agreed Bunsey was competent and sharp, "one of the smartest people I know . . . [n]o qualifiers." Gesing depo. at 14. Appellant Wiehe agreed Bunsey was "pretty sharp" when she wanted to be involved in the conversation. Wiehe depo. at 20.

{¶ 40} The March 4, 2022 personal electronic signature card Bunsey signed indicated the accounts were "individual" with a notation, "Customers to be added later: Barbara A. Walker-Cox, Exp. 04/03/2022." *See* Exhibit 3, attached to Chase Bank's October 7, 2024 Motion for Summary Judgment. The March 10, 2022 personal electronic signature card Walker-Cox signed, at the direction of Bunsey, changed the account from an individual account to a joint account. *See* Exhibit 4, attached to Chase Bank's October 7, 2024 Motion for Summary Judgment. It was explained that the accounts could not be listed as joint accounts until the preauthorized joint account owner, in this case, Walker-Cox, "presents to a Chase branch in person and is officially added to the account." *See* Affidavit of Chad T. Miller, attached to Chase Bank's October 7, 2024 Motion for Summary Judgment as Exhibit G. The August 18, 2022 personal electronic signature card Bunsey and Walker-Cox both signed changed the account to "Joint - POD" and listed the account title as Bunsey *or* Walker-Cox and listed appellants as PODs. *See* Exhibit 5, attached to Chase Bank's October 7, 2024 Motion for Summary Judgment.

{¶ 41} In their affidavits, all appellants averred they never heard Bunsey say to anyone that she wanted Walker-Cox to be the owner of her accounts upon her passing. But that does not mean that was not Bunsey's intention. In fact, Bunsey's actions belie the argument that she intended appellants to inherit the funds upon her passing. It is undisputed that Bunsey was not mentally impaired and was "sharp." She contacted Siringer and informed him over the telephone and in person that she wanted Walker-Cox on the accounts with her. She signed the electronic signature line indicating she was in receipt of the Deposit Account Agreement and was bound by the terms and conditions contained therein. The agreement includes definitions of joint accounts and POD accounts, and states: "When two or more people are listed as owners of a personal account, the account is a 'joint account' and each owner is a 'joint owner.' Each joint owner has complete control over all of the funds in the account." *See* Section II(A)(2) of the Deposit Account Agreement attached to Chase's October 7, 2024 Motion for Summary Judgment as Exhibit 2. The section further states: "Except as otherwise stated in this paragraph, a joint account has rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created without these rights." *Id.* Bunsey did not elect to have a joint account without rights of survivorship. She called Walker-Cox and told her to go to her local Chase Bank and add herself to the accounts. Thereafter, she and Walker-Cox added appellants as PODs, again, signing by electronic signature with the Deposit Account Agreement attached which stated: "If a joint account also contains a "payable on death" or "in trust for" designation, the account always includes a right of survivorship and is payable to the beneficiary only upon the death of

the last surviving owner."  *Id.*  On two separate occasions, Bunsey affirmed by signature what she was doing.

{¶ 42} Even if Bunsey did not read the contents of the Direct Account Agreement she acknowledged receiving, a "contract is interpreted by its plain meaning, even if one of the parties fails to read the contract" and the "creation of a joint and survivorship account is a contractual arrangement between the bank and the depositors."  (Citations omitted.)  *Kopp v. Bank One, NA,* 2003-Ohio-64, ¶ 17 (11th Dist.).  The Supreme Court has held:

1. The survivorship rights under a joint and survivorship account of the co-party or co-parties to the sums remaining on deposit at the death of the depositor may not be defeated by extrinsic evidence that the decedent did not intend to create in such surviving party or parties a present interest in the account during the decedent's lifetime.

2. The opening of a joint and survivorship account in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at his or her death.

*Wright v. Bloom,* 69 Ohio St.3d 596, paragraphs one and two of the syllabus.

{¶ 43} Bunsey's action of signing the two signature cards is evidence of her intent to form a joint account with rights of survivorship with Walker-Cox with appellants as PODs.  Chase Bank complied with R.C. 1109.05 which states: "At the time of opening a deposit account, a bank shall provide the depositor a statement containing the existing terms and conditions of the deposit contract.  The statement may be set forth on the depositor's signature card, which card may be electronic or in writing."  And upon Bunsey's death, Chase Bank complied with R.C. 1109.07(A) which states: "When a deposit is made in the name of two or more persons, payable to either or the survivor, the bank may pay all of the deposit, any part of the deposit, or any interest earned on the deposit, to either of the named persons, or the guardian of the estate of either of the named persons, whether or not the other person is living."

{¶ 44} As the trial court aptly reasoned in granting the motions for summary judgment, we also do not find any material facts to exist on appellants' claims in their second amended complaint.  In addition, we find there is no real controversy or justiciable controversy between the parties for a declaratory judgment, and there is nothing in the record to support reformation or rescission of the agreement.

{¶ 45} Upon review, we do not find the trial court erred in granting summary judgment to appellees.

{¶ 46} Assignments of Error I and II are denied.

{¶ 47} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By: King, J.

Hoffman, P.J. and

Montgomery, J. concur.